406 A.2d 1060

**COMMONWEALTH of Pennsylvania**

v.

**Mary Yvonne HUMPHREYS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 1978.

Decided June 27, 1979.

322

Louis R. Dadowski, Assistant Public Defender, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before VAN der VOORT, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was convicted by a jury of recklessly endangering another person[1] and endangering the welfare of chil-

1. 18 Pa. C.S. § 2705.

dren.[2] After her post-trial motions were denied, she was sentenced on the recklessly endangering another person conviction to one year less two days to two years less one day's imprisonment, and on the endangering welfare of a child conviction to two years probation, to commence upon the expiration of the prison term.

On Monday morning, October 11, 1976, after receiving a telephone call from appellant's mother-in-law, police went to appellant's residence and discovered appellant's nine year old son lying dead on the floor of his bedroom. The floor of the room was uncarpeted and its walls were uncovered by either paint or wallpaper. The single window in the bedroom was nailed shut and the bedroom had a boltlock on the outside. The room had no artificial lighting. A mattress and a dresser were the room's only furnishings. Although an examination of the victim's body revealed numerous bruises, abrasions, scars and contusions, the medical examiner established that the direct cause of death was interstitial pneumonia.

The victim had been sick when he arrived home from school on Friday, October 8, 1976, and his physical condition continued to deteriorate throughout the weekend. On Sunday evening, October 10, 1976, the evening before his death, the victim lay on the floor for about an hour; he became delirious and began calling for his school teacher. Appellant's husband suggested that the boy be taken to a hospital. Appellant discouraged this idea, arguing that, if he were taken to the hospital, the welfare agency would take him away from them because of the bruises on the child's body. As a result, the child was not taken to the hospital, nor given any medical treatment at all. The victim died sometime during the weekend.

Appellant raises eight assignments of error.

### I.

Appellant argues that the Court below erred in refusing to grant a mistrial when a Commonwealth witness com-

2. 18 Pa. C.S. § 4304.

mented upon appellant's assertion of her right to remain silent while being questioned by police. The Commonwealth called Officer James J. Laird of the Allegheny County Police Department, who testified as follows:

Q. At that time did you advise Mrs. Humphreys of her rights?

A. Yes, she was advised of her rights.

Q. Did she state anything to you with respect to Larry?

A. Yes she did. She told my partner and myself that Larry arrived home from school on Friday. He was in good health. We were particularly interested how he was feeling, he was in good health. Friday he became a little ill, he developed the sniffles on Saturday, we asked if he had been punished at all on Friday or Saturday that weekend, and she stated not that she remembered. She then stated that Larry became sick on Sunday, throwing up, diarrhea, that sort of thing. Would not eat. She went on in her statement at one point and stated that Larry while at the dinner table on Sunday fell from his chair. We asked her how that came about, how he happened to fall from the chair, and her answer was "I guess it was because I hit him, because he wouldn't eat." She further stated that after dinner Larry wanted to lie down. She told us that she instructed him to lie on the floor in the dining room stating that he did have diarrhea and that they did not want him running back and forth to the bathroom. At this point, Mrs. Humphreys decided to exercise her rights and refused to make any further statement unless there was an attorney present.

Defense counsel immediately moved for a mistrial on the grounds that the Commonwealth witness had testified concerning appellant's exercise of her right to remain silent. The Commonwealth responded that, because appellant intended to take the stand, the witness's testimony was not error; and that, alternatively, if the testimony were error, it could be cured by cautionary instructions to the jury. The

court then announced that it would give the Commonwealth until the next day to research its arguments. Court was then recessed for the day because it was late in the afternoon. The following morning, at sidebar, the court denied appellant's motion for a mistrial. The court then, sua sponte, gave the jury an extensive cautionary instruction which comprises four pages of trial transcript.[3]

 It is a violation of the accused's constitutional rights against self-incrimination to make reference to his silence while in police custody. *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624 n. 37, 16 L.Ed.2d 694, 720 n. 37 (1966); *Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978). Not every such reference, however, requires a new trial. *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976). *Commonwealth v. Quartman*, 253 Pa.Super. 460, 385 A.2d 429 (1978). Prompt and adequate cautionary instructions can cure what might otherwise be reversible error. *Commonwealth v. Williams*, 252 Pa.Super. 435, 381 A.2d 1285 (1978). However, unless a defendant requests curative instructions, thereby attempting to protect himself to the maximum in his trial, he will not be heard to complain on appeal of prejudicial error. *Commonwealth v. Quartman*, supra, 253 Pa.Super. at 464, 385 A.2d at 432.

 Appellant here argues that, because cautionary instructions were not given until the following day, they were not sufficiently prompt to obviate the prejudice caused by the foregoing remarks. Since appellant did not request cautionary instructions until the court's charge to the jury, he will not now be heard to complain that the cautionary instructions were not timely given. *Commonwealth v. Quartman*, supra. Appellant also argues that since the court's instructions were not given until the next day they compounded rather than obviated the error of the witness's remarks. We find this argument unpersuasive. As we said in *Quartman*, supra, 253 Pa.Super. at 464, 385 A.2d at 431–432, "it is clear that counsel should likewise be permit-

3. The court, at appellant's request, gave further cautionary instructions on this point in its charge to the jury.

ted to request that the court not give curative instructions sua sponte." By failing to do so, appellant has waived any challenge, on appeal, to the court's sua sponte instruction. *Quartman, supra.*

## II.

Appellant complains that the trial court erred in refusing to grant appellant's challenge of venirewoman Marion Shortall, who felt that appellant's son, the victim, had been neglected.[4] Even assuming that the challenge for cause should have been sustained, the error was harmless. Ms. Shortall was eventually dismissed on peremptory challenge by the defense; and appellant does not allege that by utilizing a peremptory challenge to dismiss this juror she was harmed in any way. This assignment of error is without merit.

## III.

Appellant alleges that certain photographs taken by police in her home violated her Fourth Amendment right to be free of illegal search and seizure and that the admission of these photographs in evidence was reversible error.[5] This

4. Ms. Shortall testified on voir dire that she had read one newspaper account of the trial of appellant's husband, who had also been convicted of various charges arising out of the death of his son, the victim herein. On the basis of this account the juror felt that the victim herein had been neglected. The court asked her three times if she could put aside this opinion and render a decision solely on the evidence presented at trial. Each time she responded that she could. In light of her response the court was clearly justified in denying appellant's challenge of this juror for cause. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Commonwealth v. Martin,* 465 Pa. 134, 149, 348 A.2d 391, 399 (1975), *quoting Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961).

5. The photographs depicted the physical characteristics of various rooms in the appellant's home. They were apparently introduced into evidence to contrast the barrenness of the victim's room with

issue has not been preserved for appellate review. Appellant challenged the admissibility of these photographs in a pre-trial motion to suppress in post-trial motions, but when the Commonwealth offered the photographs at trial, appellant's counsel stated that he had no objection.[6] Issues not preserved at each stage of review, by a specific allegation of error, are waived and cannot be raised in an appeal. *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975); *see Commonwealth v. Ryan*, 475 Pa. 559, 381 A.2d 138 (1977) (appellant contended that the trial testimony of two witnesses should have been suppressed as the fruit of a confession held illegal at a pre-trial suppression hearing, and the court held that the issue was waived because appellant did not object at trial to the admission of the testimony of the witnesses.)

## IV.

Appellant contends that the lower court violated her right to confront her accusors by (a) restricting the testimony of defense witnesses concerning the sexual perversions of appellant's husband and his beating of appellant; (b) restricting cross-examination of appellant's husband as to these same matters; and (c) his charge to the jury that whatever discord existed between appellant and her husband was largely irrelevant to the issues in this case.

### a.

"[Q]uestions concer[ning the] admission or exclusion of evidence are within the sound discretion of the court and will be reversed on appeal only where a clear abuse of discretion exists." *Commonwealth v. Kramer*, 247 Pa.Super. 1, 7–8, 371 A.2d 1008, 1011 (1977). The court below permitted testimony that appellant had marital problems and that

the relative comfort of the other, especially those of appellant's other children.

6. Appellant did object to the admission of one photograph, alleging that a proper foundation had not been established for its admission. Appellant has waived this objection by failing to raise it in post-trial motions. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

appellant's husband beat her, but did not permit testimony concerning details of the beatings, the couple's marital problems, or any testimony as to the husband's sexual perversions. The court acted properly in restricting such testimony, because it was irrelevant to the issues. As was said in *Commonwealth v. Collins*, 447 Pa. 300, 302, 290 A.2d 121, 122 (1972). "[T]he attention of the jury should not be diverted from the issue on trial by collateral matters . . . ."

b.

The court also acted properly in sustaining objections to appellant's attempts to cross-examine her husband concerning details of his beating her and his sexual idiosyncracies. Appellant claims that, by restricting testimony concerning these beatings, the court below prevented her proving that the crimes of which she was charged were committed by her husband. Proof of the commission of a crime by someone else is admissible. *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977). In this case, the court did allow cross-examination of Mr. Humphreys concerning the treatment of his son. What the court did not allow was detailed testimony of Mr. Humphreys' treatment of appellant. This was clearly collateral and hence properly excluded.

Appellant argues that by restricting testimony as to Mr. Humphreys' sexual peculiarities appellant was prevented from proving that Mr. Humphreys had a mental illness at the time of his son's death which affected his ability to give an accurate account of the incident. While questions involving mental illness, existing at the time of an incident, which affects a witness's ability to give an accurate account of his experience are admissible to impeach credibility, evidence of mental derangement on some matter not connected with the litigation is not admissible. *Commonwealth v. Duffy*, 238 Pa.Super. 161, 353 A.2d 50 (1975). Because Mr. Humphreys's sexual proclivities were unrelated to the case and hence would not affect his ability to observe his son's death and recount his observations thereof, we conclude that the court properly restricted cross-examination. *Commonwealth v. Duffy*, supra.

### C.

Appellant argues that the lower court destroyed the basis of her defense, when it charged the jury that any "discord, or ill feeling, or lack of feeling that existed between the husband and wife . . . is to a large extent irrelevant to the issues in this case and I want you to keep that in mind." By failing to object to this passage before the jury retired to deliberate, appellant has waived her right to challenge it on appeal. Pa.R.Crim.P. 1119(b); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

### V.

Appellant complains that, during the trial, and in the charge to the jury, the trial court made remarks critical of defense counsel, thereby depriving appellant of a fair and impartial trial.

Following the overruling of a Commonwealth objection to certain cross-examination, which objection had been made on the ground of irrelevance, the lower court said:

There may be some significance. I don't know. You have a right, but please don't take a lot of time over something like this. Go ahead.

Later, defense counsel objected to certain testimony as repetitious. In overruling the objection, the court said:

All right. Please, this is too late in the afternoon for this sort of thing. What's the difference? Go ahead.

When defense counsel sought to impeach the credibility of a Commonwealth witness on the basis of differences between his preliminary hearing testimony and his trial testimony, the following exchange occurred between Mr. Ruslander, who was defense counsel, and the court.

THE COURT: Mr. Ruslander, is there a particular page you want to point out?

MR. RUSLANDER: I believe there—

THE COURT: If he states he doesn't remember, if you have an instance you can point out to him that refreshes his memory—

MR. RUSLANDER: I believe that—

THE COURT: What page?

MR. RUSLANDER: I believe at no time during the hearing did the Lieutenant say that he did not try the window because he thought it was painted shut.

THE COMMONWEALTH: Whether he did or did not, it is not important, he is saying it now, and that is the only important thing, and what he said on other occasions for the purpose of contradiction is there, but there is no contradiction if he says he does not remember saying it.

MR. RUSLANDER: I am not characterizing the testimony as that, I just want it to be developed, Your Honor, that this is the first time that the Lieutenant has made that statement under oath. That is all. That is my only purpose.

THE COURT: All right. And he says he doesn't remember saying it any other time. Now, lets go on from this point. Life is just too short for this sort of approach.

After the court sustained, on the ground of irrelevance, another Commonwealth objection to defense counsel's cross-examination, the following exchange between the court and defense counsel transpired:

MR. RUSLANDER: I would like to pass this through the jury.

THE COURT: You are supposed to get the Court's permission before you do that; so just don't assume that all the time.

MR. RUSLANDER: Well, we learn as we go on, your Honor.

THE COURT: I have learned that.

MR. RUSLANDER: Thank you, I have no further questions."

 "It is a maxim of our jurisprudence that a trial judge occupies an exalted and dignified position and that absolute impartiality in the conduct of the trial is expected of him." *Commonwealth v. England*, 474 Pa. 1, 16, 375 A.2d 1292, 1299 (1977). However, not every unwise or irrelevant

remark made in the course of a trial by a judge, a witness, or counsel compels the granting of a new trial. "A new trial is requested when the remark is prejudicial; that is, when it is of such nature or substance or delivered in such a manner that it may reasonably said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. England,* supra, 474 Pa. at 16–17, 375 A.2d at 1300. Having carefully reviewed the challenged remarks in the context of the trial, we are satisfied that these comments, which were directed solely to counsel and not to his client, did not reach the level where it could reasonably be concluded that appellant was deprived of a fair and impartial trial. *See Commonwealth v. England,* supra.

Appellant also claims that the following remark of the trial judge prejudiced his case:

MR. RUSLANDER: They are claiming a course of conduct, your Honor.

THE COURT: Well, that is your belief. There is nothing wrong that says you can't have that belief, but that doesn't mean it's controlling the case.

This exchange occurred at side bar, out of the hearing of the jury, and therefore could hardly have prejudiced appellant. *Commonwealth v. Whitson,* 461 Pa. 101, 334 A.2d 653 (1975).

Finally appellant claims that the following portion of the trial court's charge to the jury was error.

Now I think it must be obvious to all members of the jury that during this trial the Court has tried to keep out of the case matters which in its informed opinion are not relevant to a trial of the charges in this case and there was some insistence on the part of counsel to bring up matters—now whether counsel was fully conscious of what he was doing, or should I say they were doing, I am not sure, but it is quite clear that there were these continuing efforts to which I think may give the jury a distorted picture of this case.

Having failed to object before the jury retired to deliberate, appellant is precluded from challenging these remarks on appeal. Pa.R.Crim.P. 1119(b); *Commonwealth v. Clair*, supra.

## VI.

Appellant asserts that the trial court erred when it barred the testimony of defense witnesses, Alice Kalla and Nancy Taylor. Kalla was to testify from her knowledge of appellant fourteen years prior to the victim's death as to appellant's fondness for children and limited intelligence. Taylor, an Allegheny County Mental Health caseworker assigned to appellant's case after the death of the latter's son, was to testify to appellant's limited ability to care for herself, and the effects of abuse by her husband on appellant's ability to care for her family. Taylor would have testified also that the condition of the victim's room was not unique among poor families.

The lower court held, in its Opinion on post-trial motions, that the substance of Kalla's testimony, which related to facts and circumstances extant fourteen years before the acts for which appellant was on trial, was too remote to be relevant to the issues in the case at bar. The question of remoteness is properly vested in the discretion of the trial court, and its decision thereon will not be reversed absent an abuse of discretion. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977). The lower court's decision here is clearly supported by the record.

The lower court also acted properly in refusing to allow Taylor to testify. It is clear that her testimony would have been irrelevant to the material issues of this case. "It is central to our concept of a fair trial that the jury must decide the case on the basis of properly presented factual issues and that extraneous and irrelevant matters should be avoided." *Commonwealth v. Tirado*, 473 Pa. 468, 472, 375 A.2d 336, 338 (1977).

## VII.

 Appellant claims that certain of the assistant district attorney's closing remarks to the jury were inflammatory. The assistant district attorney told the jury that, when he was young, after being disciplined by his parents, he would vent his frustrations on his dog. He suggested to the jury that appellant might have used the victim in the same manner. By failing to object to this passage at trial, before the jury retired to deliberate, appellant has waived this issue. *Commonwealth v. Gilmore*, 470 Pa. 179, 368 A.2d 253 (1978); *Commonwealth v. Clair*, supra.

## VIII.

Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that she possessed the state of mind necessary for conviction of recklessly endangering another person and of endangering the welfare of a child. We disagree.

 The test for reviewing the sufficiency of evidence to support a verdict is whether, viewing the evidence in the light most favorable to the Commonwealth, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Ford*, 472 Pa. 542, 372 A.2d 821 (1977). A person recklessly endangers another if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S. § 2705. "Recklessness" is defined as the conscious disregard of a substantial and unjustifiable risk that a material element of an offense exists or will result from his conduct. 18 Pa.C.S. § 302. "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would object in the actor's situation." *Id.* "Serious bodily injury" is defined as bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily

member or organ. 18 Pa.C.S. § 2301. Endangering the welfare of children is defined as the knowing endangerment of the welfare of a child by violating a duty of care, protection or support. 18 Pa.C.S. § 4304.

The evidence adduced at trial clearly manifested the state of mind required to support appellant's convictions. In addition to the testimony by appellant's husband that appellant didn't like the victim as much as her other children, evidence showed the extreme difference between the condition of the victim's room and the rest of the house. There was also testimony that appellant beat the victim regularly up to and including the weekend of his death. With respect to the cause of death, the evidence showed that, even while the victim displayed symptoms of serious illness, appellant refused to provide medical attention or to allow the victim to receive it. After hearing this evidence, the jury could reasonably have found that appellant's conduct was such as recklessly to place her son in danger of death or serious bodily injury, as those terms are defined in the Criminal Code, cited above, and that she knowingly violated the duty of care she owed him.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.