STATE of Utah, Plaintiff and Respondent,

v.

Harold STONE, Defendant and Appellant.

No. 16956.

Supreme Court of Utah.

May 6, 1981.

Thom D. Roberts, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals a jury verdict and judgment which found him guilty of the crime of unlawful distribution for value of a controlled substance.[1]

Trial was held on January 15 and 16, 1980. The state first called as a witness Officer James Burns of the Salt Lake City Police Department. Burns testified that he worked with narcotics investigations in the Special Investigations Division of the Department. He further testified that on the morning of June 13, 1979, he was informed by Detective Ron Nelson that a person was coming to the station who claimed to know of a man who engaged in the sale of marijuana. Shortly thereafter, the "informant" (hereinafter referred to as "Morgan") arrived at the station and talked with Burns. They then proceeded together in Burns' vehicle to defendant's home located at 1310 East 5600 South. When they arrived at the address, there were several other people outside the house who indicated that defendant was not there but that he would be back shortly. After about ten minutes, defendant drove up in a van. Morgan introduced Burns as a friend from Arizona who could help defendant restore some of the old cars on defendant's lot. After talking for a few minutes about the cars, the three men walked together towards defendant's house. Burns testified that as they entered the house defendant volunteered something like "I picked up some marijuana last night." Morgan responded by saying he'd like some and Burns said to Morgan, but so defendant could hear, "I'll buy. I owe you." Defendant left the room and came back with two "baggies" of what appeared to be marijuana. Burns looked at the baggies, handed one back and asked, "How much?" Defendant responded, "Since he's a friend [indicating Morgan]—$45." Burns then paid defendant. Defendant handed Burns a business card as Burns and Morgan were leaving. Thereafter Burns marked the baggie and placed it in the evidence room at the station. He testified that he thereafter delivered the baggie to Dr. William Glanville, a forensic chemist, for examination.

1. In violation of U.C.A., 1953, 58–37–8.

Dr. Glanville was thereafter called by the state to testify. He testified that he tested the substance contained in the baggie and that it was his opinion that it was marijuana.

The defense called as witnesses two brothers, William Randall Timm and Paul Timm. They both testified that they were among the people outside defendant's home on the day of the alleged sale. They testified that they had just arrived from Nebraska and that they planned on staying with defendant, who was a family friend. They testified that they did not witness any sort of a sale involving defendant and either Morgan or Burns.

Defendant then took the stand. He testified as to how he had met Morgan and that they had previously smoked marijuana together. His testimony as to what happened when Morgan came to his home with Burns is essentially the same as Burns' own testimony except as to the conversation regarding marijuana. Defendant testified that Morgan asked defendant if he had any marijuana. Defendant said he had "a little to smoke" but that he didn't have any for sale. On direct examination, he then testified as follows:

Q. Did you give Mr. Morgan any marijuana?
A. No. I didn't give him any marijuana at the time; No. I had given him marijuana, but I didn't at the time.
Q. You didn't on that day?
A. No.
Q. Did you give any to Mr. Burns?
A. No.
Q. Did you take $45 from him?
A. No.

The jury returned with a verdict of guilty and sentencing was scheduled for February 11, 1980. On said date, the court entered final judgment but stayed imposition of sentence and placed defendant on probation. This appeal followed.

The crux of this appeal relates to the defense of entrapment. U.C.A., 1953, 76–2–303, provides, in pertinent part, as follows:

(3) The defense provided by this section [entrapment] is available even though the actor denies commission of the conduct charged to constitute the offense.

(4) Upon written motion of the defendant, the court shall hear evidence on the issue and shall determine as a matter of fact and law whether the defendant was entrapped to commit the offense. Defendant's motion shall be made at least ten days before trial except the court for good cause shown may permit a later filing.

(5) Should the court determine that the defendant was entrapped, it shall dismiss the case with prejudice, but if the court determines the defendant was not entrapped, such issue may be presented by the defendant to the jury at trial. Any order by the court dismissing a case based on entrapment shall be appealable by the state.

The above-cited statute provides that written notice of the defense of entrapment shall be filed at least ten days before trial. Six days before trial, on January 9, 1980, defendant filed a motion (hereinafter referred to as "motion to produce") which read, in pertinent part, as follows:

. . . Defendant . . . hereby moves the . . . court for an order requiring plaintiff to produce for trial as a witness a Mr. Ken Morgan, the individual used as an informant to gain evidence in the above case upon the grounds and for the reasons that said witness has crucial information with respect to [the defense of entrapment] and further . . . that the witness will testify contrary to the prosecution's witnesses . . . .

On the morning of the trial, the court heard arguments on the motion to produce. The trial court thereupon ruled as follows:

A motion and notice on behalf of the defendant was filed on January 9th of 1980. The record may further reflect that there has been no notice of entrapment filed as required by the statute.

The court denies the motion, number one, as not being timely filed. There was adequate time beforehand where the matter could have been filed.

And, number two, the defense of entrapment has not been raised.

Number three, pursuant to the case law which has been furnished to the court, the incident in question, both the—at least the allegation is that the information—or, the event in question took place both in the presence of the defendant, Officer Burns and the alleged informant. And anything that took place would be subject to being disclosed by Officer Burns upon cross-examination.

The prosecution and the defense then argued to the court whether the issue of entrapment could nevertheless be raised at trial. The court ruled that good cause had not been shown to waive the 10-day notice requirement and ruled that the defense of entrapment would not be available to defendant at trial.

Later in the day, after the jury had been empaneled, but before trial had begun, the court requested that counsel come to his chambers. The court indicated that in reviewing the statute and case law he had decided that defendant was in a position to claim entrapment. *"But obviously you must raise the issue,"* the court cautioned. He then reaffirmed his denial of the motion to compel Morgan's attendance "for the reasons as indicated, plus the further reason that with the elapsed period of time the defendant should have been able to ascertain the location of the individual and could have subpoenaed him."

■ On appeal, defendant asserts three specific points of error. The first claim is that defendant was denied his rights of due process and fair trial when the trial court refused to compel attendance of Morgan or to require disclosure of information as to his whereabouts. In support of this claim, defendant relies heavily upon the case of *Roviaro v. United States.*[2] In *Roviaro,* after discussing the nature of the so-called "informer's privilege," the United States Supreme Court required disclosure of an informant's *identity* because he was the *sole participant* (together with the defendant) in the drug transaction charged. Defendant here concedes that he knew Morgan's identity and that the alleged sale of marijuana took place in the presence of both Morgan and Burns. *Roviaro* is therefore inapposite.

Defendant also quotes from language from the case of *People v. Goliday*[3] for the proposition that the prosecution is obligated to "undertake reasonable efforts in good faith to locate the informer." In the instant case, it is undisputed that the prosecution did exercise good faith in trying to locate Morgan. At the hearing on defendant's motion to produce, the prosecutor stated that "the officer [Burns] did at my request attempt to find Mr. Morgan simply to clarify the speculations that had been raised." An affidavit filed with the court stated that Burns had made a good faith effort through several attempts to locate Morgan but that Burns was unable to locate him or to obtain an address where he could be reached. Based on the facts presented, and in light of defendant's failure to subpoena Morgan, the trial court properly denied defendant's motion to produce.

■ Defendant's second claim on appeal is that the court erred in limiting defense counsel's opening statement with regard to entrapment in refusing to instruct the jury on the defense of entrapment.

The interchange giving rise to defendant's claim of error with respect to his opening statement is as follows:

[DEFENSE]: Now, it's alleged, and we expect testimony to the effect, that Mr. Morgan had some contact with Harold Stone with regard to this transaction, and much—and that this man acted in cooperation or at the direction of the police officers. So therefore it's just like the police officers—.

2. 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

3. 8 Cal.3d 771, 106 Cal.Rptr. 113, 505 P.2d 537 (1973).

[PROSECUTION]: Your Honor, I would object at this point. I don't think any evidence to that nature has been purported by the defendant at this point in time.

THE COURT: The objection will be sustained to the comment and the jury is advised to disregard it.

This ruling appears to be inconsistent with the court's earlier decision that defendant would be permitted to claim entrapment, notwithstanding his failure to comply with the statute. As acknowledged by the defense, "the purpose of this opening is to give you an idea of what we expect to come in, what we hope you will look for." Any error in sustaining the objection is rendered harmless by reason of the fact that there was no evidence whatsoever adduced at trial which raised the issue of entrapment. Defendant made no assertion that he was entrapped when he sold marijuana; to the contrary, as seen in his testimony quoted *supra*, defendant explicitly denied that he either sold or gave marijuana to either Burns or Morgan on the date in question.

■ Entrapment is available even though the actor denies commission of the conduct charged.[4] However, *as a practical matter*, the defenses of "innocence" and "guilty but entrapped" become mutually exclusive by the time the case reaches the trier of fact. It is difficult to imagine a defendant telling a jury, "I didn't do it—but if I did, I was entrapped." By urging such inconsistent factual contentions, a defendant's credibility would suffer immensely. Although conceivably possible to claim both defenses at trial, as a tactical matter a defendant will generally pursue either one or the other when testifying before a jury. The defendant in the instant case chose to claim absolute innocence.

■ This leads to a discussion of defendant's claim of error with respect to the jury instructions. The general rule is that a defendant's entitlement to a jury instruction on his theory of the case is conditioned upon the existence of a reasonable basis in the evidence to justify the giving of the proposed instruction.[5] In *State v. Pappas*,[6] we applied the general rule to an entrapment situation, and stated that "in an appropriate case where there is no evidence whatsoever relating to entrapment there would be no justification for the jury [to consider] that issue." Defendant identifies no evidence going to the issue of entrapment. Any part of the testimony of the state's witnesses which might arguably raise the issue of entrapment was totally discounted by defendant's own testimony where he claimed that the transaction never occurred. Defense counsel so much as concedes that the evidence as offered was inconsistent with a claim of entrapment. After both parties had rested and after an overnight recess, the following interchange occurred as the court was going over its proposed jury instructions:

[DEFENSE]: Before I take exception to these instructions, Your Honor, I would have one request of the court. I suppose it ought to be in motion form.

At the close of yesterday, my client was in essence the last witness to be called. During that—during his examination I was surprised at his testimony, and I initially had thought that he had apparently decided to change his testimony from what I expected it to be.

Upon leaving the courtroom I expressed to him I didn't—I don't like surprises. He asked me what I was talking about and I questioned him with regard to his testimony. And he indicated some confusion and surprise at my simplification of his testimony.

It was his understanding expressed just after the court was recessed yesterday that he had in fact testified that he had given to Mr. Morgan a certain quantity of

---

4. U.C.A., 1953, 76–2–303(3), quoted *supra*.

5. *State v. Eagle*, Utah, 611 P.2d 1211 (1980); *State v. Castillo*, 23 Utah 2d 70, 457 P.2d 618 (1969).

6. Utah, 588 P.2d 175 (1978).

marijuana, what I believe to be marijuana, on the date that Officer Burns was with him.

Upon explaining to him the importance of testimony as it came across, he was surprised and disappointed. I would at this time move the court to allow me to reopen my case in chief and allow him to testify as to the transaction.

By way of a proffer of proof, I would expect his testimony would be as follows: that on the day in question there was a transfer made between parties of a substance of marijuana; that that transfer was made to Mr. Morgan, it was not made to Mr. Burns.

I would expect that to be his testimony. His confusion apparently resulted from his concern about whether or not he thought it would be—questions were concerned with whether or not he made a sale or a transaction with Mr. Burns, whether or not it was with Mr. Morgan.

Following arguments, the court properly denied defendant's motion to reopen his case. Because there was no evidence of entrapment, defendant's requested instructions thereon were properly refused.

Defendant's third and final claim of error relates to the terms and conditions of his probation. Inasmuch as these issues were not raised below, we do not address them on appeal.[7]

Affirmed.

HOWE and OAKS, JJ., concur.

STEWART, J., concurs in the result.

MAUGHAN, Chief Justice, dissenting:

For the following reason, I dissent.

The main opinion states, "Any part of the testimony of the State's witnesses which might arguably raise the issue of entrapment was totally discounted by defendant's own testimony where he claimed that the transaction never occurred."

---

7. See, e. g., *State v. Laird*, Utah, 601 P.2d 926 (1979), and *State v. Laursen*, Utah, 584 P.2d 873 (1978).

Such is not the law. The law is as stated in Utah Code Annotated, 1953, 76–2–303— Entrapment, subsection (3):

"The defense provided by this section is available even though the actor denies commission of the conduct charged to constitute the offense."

See also *State v. Taylor*, 599 P.2d 496 (1979), where this Court has so held.

Where the main opinion states testimony of the State's witnesses might arguably raise the issue of entrapment, in my view, the defendant should have been allowed to raise and argue it. I would reverse for that reason.