488 A.2d 1144

**COMMONWEALTH of Pennsylvania**

**v.**

**Charles Harry McGUIRE, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1984.

Filed Feb. 22, 1985.

324

Samuel J. Reich, Pittsburgh, for appellant.

Melinda G. Tell, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, President Judge, and CAVANAUGH, BROSKY, ROWLEY, McEWEN, TAMILIA and JOHNSON, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is a direct appeal from the judgments of sentence entered after appellant was found guilty by a jury of multiple violations of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, as amended 35 P.S. § 780–101, *et seq.* and criminal conspiracy, 18 Pa.Cons.Stat. § 903(a)(1). At Information No. CC8002095A, appellant was charged with two counts of violation of the CSDDCA, resulting from the possession and delivery of drugs to undercover police officers on January 14, 1980. Two counts of criminal conspiracy stemming from appellant's activities on January 31, 1980 were also charged therein. At Information No. CC8001638A, appellant was charged with two CSDDCA violations, stemming from his delivery of illegal drugs to police officers on February 26, 1980. Consecutive sentences of 2½ to 5 years

imprisonment were imposed at Information No. CC8001638A. Similarly, sentences of 2½ to 5 years imprisonment were entered on each of three counts of Information No. CC8002095A, to run concurrent with the sentences at Information No. CC8001638A.[1]

Appellant presents three questions for our review: first, whether the trial court improperly denied his requested point for charge on the defense of entrapment with respect to the February 26, 1980 incident.[2] Second, whether the trial judge unduly interfered with the presentation of his defense, denying him a fair and impartial trial, and third, whether the consecutive sentences imposed at Information No. CC8001638A are legal.

Although the record in this case is lengthy, the pertinent facts may be briefly stated as follows:

Pennsylvania State Troopers Weis and Galloway conducted an undercover narcotics investigation which first involved appellant's co-defendants in October of 1979.[3] The undercover agents became friendly with the co-defendants, and made several drug purchases from them. Appellant's name was mentioned as a supplier of drugs and the officers prevailed on the co-defendants to introduce them to appellant. Appellant thereafter sold or delivered drugs to the officers on two separate occasions in 1980: January 14 and February 26. On February 26, appellant was arrested and charges were filed based on both transactions.

There is a dispute in the testimony concerning the circumstances of the final transaction on February 26. The undercover officers testified that the delivery of substantial amounts of cocaine and methaqualone, which were wrapped in a brown paper bag, was the fulfillment of a bargain they had with appellant for the purchase of these specific drugs. Appellant, on the other hand, testified that one of the

1. Sentence was suspended on the remaining count.
2. Although at trial, counsel for appellant requested a charge to the jury on entrapment generally, on appeal appellant pursues this claim only with regard to the circumstances of February 26, 1980.
3. Appellant's co-defendants are not parties to this appeal.

undercover officers had requested that appellant, as a personal favor, pick up a plainly wrapped parcel for him from a source that had been arranged by the officers. Appellant then testified that he delivered the unopened parcel to the undercover officers, at all times unaware that it contained drugs.

## I.

Appellant's defense to the February 26 incident was based on two theories. First, appellant contended that since he was a mere courier, unaware of the illicit nature of the contents of the parcel, he lacked the requisite intent to support his conviction for delivery of the drugs on that occasion. Second, he contended that the undercover police activity amounted to entrapment. With respect to his entrapment defense, appellant requested a point for charge which tracked 18 Pa.Cons.Stat. § 313, the entrapment provision of the Crimes Code. The trial court refused this request.

On appeal, argument was scheduled before this court *en banc*, to review the trial court's determination that appellant was required to admit *all* of the constituent elements of the crime charged, including knowledge of the package's contents at the time he delivered it, before he was entitled to a charge on entrapment.

At the outset, we examine the present nature of the defense of entrapment in light of the defense as it formerly existed. Formerly, the defense consisted of two elements: there must have been (1) evidence that the government initiated the crime and (2) evidence negating the defendant's propensity to commit the crime. *See Commonwealth v. Conway*, 196 Pa.Super. 97, 173 A.2d 776 (1961). Thus, the inquiry focused on whether the defendant was, prior to his or her contact with the police, predisposed to commit the crime charged. *See e.g., Commonwealth v. Harrison*, 228 Pa.Super. 42, 323 A.2d 848 (1974). In addition, the defendant was required to admit *all* elements of the crime charged before being permitted to raise the defense of entrapment.

■ By enacting 18 Pa.C.S.A. § 313, however, the Legislature has rejected the "subjective" standard that formerly comprised the entrapment defense. Section 313 provides,

(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

(c) Exception.—The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

Noticeably absent from section 313 is any reference to reliance on a defendant's own predisposition. Rather, the focus of inquiry has now shifted to the nature of the *government's* conduct. As such, criminal defendants may legitimately contend, "Regardless of my criminal inclinations, I may not be held responsible for any crime, because the police have engaged in improper conduct intended to provoke the commission of a crime." Thus, the entrapment defense is no longer a means of "justifying" wrongful actions, but is in the nature of a bar to punishment because of improper conduct on the part of the Government.

■ In its effort to deter governmental conduct which "induces or encourages" citizens to commit crimes, the Legislature has defined improper conduct in two ways. Should law enforcement agents misrepresent the nature of the conduct encouraged, such that civilians are induced to believe that the encouraged behavior is lawful, an entrapment will have been perpetrated for purposes of § 313(a)(1). Significantly, it is not even necessary here that the defendant actually be misled by the government's representations; the statements need only be *designed to induce the belief* that the conduct is lawful. Thus, even if the defendant *knows* that his conduct could expose him to criminal liability, such grossly unwarranted conduct by law enforcement agents or those acting in cooperation with them compels, in itself, the conclusion that the defendant has been entrapped and must be acquitted.

■ Entrapment is also defined as the use of "methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." § 313(a)(2). Again, a particular defendant's attitude is not relevant; he need not prove that *he* was not "ready to commit" the crime. Rather, he must establish by a preponderance of the evidence that the methods of persuasion directed toward him, if utilized again, present a substantial risk that otherwise honest, law-abiding citizens may at some time be ensnared.

■ As the statutory definitions reveal, then, Pennsylvania's entrapment statute addresses the concern over "unconventional" investigatory methods, and the *potentialities* inherent in these overreaching tactics. As such, the analysis only incidentally involves a particular defendant.[4]

4. The more recent entrapment cases have rejected the subjective theory in favor of the objective theory of entrapment. *See, e.g., Commonwealth v. Taylor,* 299 Pa.Super. 113, 445 A.2d 174 (1982); *Commonwealth v. Danko,* 281 Pa.Super. 97, 421 A.2d 1165 (1980).

This view of § 313 finds support in the Comment to the Pennsylvania Standard Jury Instructions, Criminal Instructions Subcommittee Drafts, § 8.313 (1974).

The defense of entrapment is defined by Crimes Code § 313. With the exception of certain bodily injury crimes, every crime is subject to the defense, see Crimes Code § 313(c). Section 313 follows *Model Penal Code, Proposed Official Draft*, § 2.13 (1962) except that it eliminates a Model Penal Code requirement that the defense be tried by the court. *Section 313 adopts a concept of entrapment new to Pennsylvania law.* Pennsylvania courts had previously followed the approach of the majority in two United States Supreme Court cases, *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1938) (1958). The old Pennsylvania law required that the defendant be an otherwise innocent person until the police or their agent, through creative activity, planted the idea to commit a crime in his mind and induced him to do so, see *Commonwealth v. Klein*, 222 Pa.Super. 409, 294 A.2d 815 (1972); *Commonwealth v. Conway*, 196 Pa.Super. 97, 173 A.2d 776 (1961). Crimes Code § 313 and Model Penal Code § 2.13 follow the minority view of the United States Supreme Court as articulated by Justice Frankfurter in his concurring opinion to *Sherman v. United States, supra* [356 U.S.] at 378, 78 S.Ct. 823, 2 L.Ed.2d 854. This view conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. *The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime. The defense is available to any defendant,* irrespective of his character, provided the government has created a risk that those who presently would obey the law might be drawn to crime, see *Model Penal Code, Tentative Draft No. 9,* 14–15, 19–20 (1959); *Com-*

*monwealth v. Conway, supra* [196 Pa.Super.] at 103, 173 A.2d 779 (1961).

(Emphasis added.)

We turn, then, to the pivotal issue here: is the common-law rule that a defendant must admit *all* elements of the offense charged sufficiently inconsistent with this new approach to entrapment to require its alteration or abolition?

Preliminarily, we note that neither the statute itself, nor any of the authoritative discussions of the defense of entrapment in Pennsylvania adequately address this question. Moreover, a split of authority exists among American jurisdictions on this precise issue. *Compare People v. Arriaga,* 92 Ill.App.3d 951, 48 Ill.Dec. 387, 416 N.E.2d 418 (1981) (Rejecting fifteen-year old precedent and re-adopting common-law rule, court held that, absent admission of statutorily-required mental state, entrapment defense was unavailable to criminal defendant) with *Martinez v. State of New Mexico,* 91 N.M. 747, 580 P.2d 968 (1978) (Where denial of some of the elements of an offense was not factually repugnant to entrapment defense, trial court *must* issue requested instruction on entrapment.)[5]

Upon consideration of the analyses underlying these divergent positions, we conclude that continued adherence to the common-law rule would indeed circumvent the legislative direction embodied in § 313. As such, we adopt the view, articulated in *Martinez v. State, supra,* as the appropriate rule consistent with the basic change in the defense as wrought by the Pennsylvania Legislature.

■ Several factors warrant this change. First, preclusion of the defense where the accused denies criminal intent, as in the instant case, is neither explicitly required by the terms of the statute, nor compelled by the nature of the inquiry set forth within it. Although the Legislature did provide an exception to the applicability of the defense, § 313(c), no language directing that entrapment be raised, if at all, to the exclusion of all other defenses, or forbidding

5. *See also,* the cases collected at 5 A.L.R.4th 1128 (1981).

assertion of this defense when one or more of the elements of the offense are contested, was included. Moreover, while the requirement of admission of criminal culpability may originally have been warranted, the Legislature's elimination of the accused's predisposition as the focal inquiry seriously calls into question the wisdom of continued adherence to the common-law rule. Entrapment is recognized as a defense because the Legislature refuses to permit officers of the law to consummate illegal or unjust schemes designed to foster, rather than to prevent or detect, crime. Thus, an entrapment rule that focuses almost exclusively on police misconduct should not properly be restricted by compelling a defendant to incriminate himself as a prerequisite to invocation of the rule, at the risk of not being able to meet his burden of proving entrapment. *People v. Perez*, 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934 (1965). To place a defendant in this dilemma would frustrate the assertion of the defense itself, and would thus undermine its policy. As the Supreme Court of New Mexico noted,

> While entrapment is not a defense of constitutional dimension, ... requiring the defendant to forego proof beyond [a] reasonable doubt to assert entrapment relieves the State of its constitutional burden and is tantamount to requiring him to plead guilty. Where the defenses are not mutually repugnant, this is asking too much.

*Martinez v. State*, 91 N.M. 747, 750, 580 P.2d 968, 971 (1978) (Citation omitted.)

The defenses raised in the instant case—lack of criminal intent and entrapment—are not mutually repugnant. Accordingly, the Commonwealth may not be relieved of establishing appellant's criminal intent beyond a reasonable doubt.

■ As several courts have recognized, the common-law rule is predicated upon the belief that an individual cannot logically deny the commission of an offense and at the same time claim entrapment. *See State v. Branam*, 161 N.J.Super. 53, 390 A.2d 1186 (1978), aff'd 79 N.J. 301, 399 A.2d 299 (1979) and *State v. McBride*, 287 Or. 315, 599 P.2d 449

(1979). We are persuaded, however, that this alleged "logical" inconsistency is, in fact, illusory. As the *McBride* court observed, the apparent inconsistency stems merely from the fact that a finding of entrapment depends on an antecedent determination that the criminal act was indeed committed; a jury cannot ultimately conclude that the accused did not commit a crime and that he was entrapped into committing it. *McBride*, at 319–320, 599 P.2d at 451. On the other hand, an accused's own testimony may be internally consistent and still create a reasonable doubt both as to the commission of a crime and the propriety of the police agent's conduct. For example, a defendant charged with purchasing an illegal drug may claim that a police officer or agent tried to convince him to purchase the drug, but that he nevertheless resisted. Because the factfinder is free to believe all, part, or none of the defendant's testimony, the testimony could support an acquittal on either of two grounds: (1) the defendant did not purchase the drug, or (2) the defendant was entrapped into purchasing the drug.

Similarly, we perceive no inconsistency in the denial of the requisite mental state (as opposed to conduct) and an allegation of entrapment, given the shift in perspective effectuated by § 313. Inducement of the underlying activity is not necessarily inducement of a particular state of mind, because the activity may reflect any of several different motives. Moreover, the language of § 313 suggests that an accused's lack of criminal intent is all but assumed. Section 313(a)(1) makes the defense available to an individual who is told by police agents that the conduct constituting the offense is not unlawful and who engages in that conduct in response to that information. Consequently, under this provision, there will be cases in which culpable intent will not exist. Why, then, should a defendant who explicitly contends that he did not possess the requisite intent be deprived of the benefit of the entrapment defense, merely because he expressed his lack of intent?

Furthermore, appellant's testimony in the instant case, if believed, reveals no inconsistency between an assertion of innocence, and a claim of entrapment as it currently exists in Pennsylvania. Appellant testified that the undercover agents requested a favor of him, that he pick up a package and deliver it to them. The parcel was plainly wrapped; appellant testified he did not know what was in the package until the officers opened it.

■ As in the earlier example, appellant's testimony is susceptible to several interpretations which would support an acquittal: (1) he did not possess the requisite legal intent, i.e., knowledge of the package's contents, and (2) regardless of any knowledge appellant may have had concerning the package's contents, the agents' conduct was "designed to induce [his] belief" that delivery of the parcel to them was lawful. Whether he did or did not know, or whether he was entrapped into committing the crimes, are both reasonable conclusions based upon legitimate inferences supported by the testimony. Because both constructions may be valid, there is no logical reason to prefer one to the total exclusion of the other; the appellant is entitled to have the issue submitted to and decided by a jury.[6]

■ We conclude, therefore, that a criminal defendant should no longer be required to admit to every element of the offense with which he is charged before he may contend that he was entrapped into the conduct which serves as the basis for that charge. Rather, as in *Martinez v. State, supra,* we hold that the entrapment defense will be available to defendants, such as appellant, who admit to at least *some* of the elements charged. Where that line will ultimately be drawn will depend on the facts and the legal

6. The mere fact that, as a matter of strategy, a given criminal defendant may choose not to pursue every means of defense available to him does not justify a *requirement* that he choose one from among several alternative defenses.

elements of the crimes with respect to which the defense is asserted.[7]

■■■ Official conduct designed to provoke criminal behavior, or which creates a substantial risk that unwitting citizens will be implicated in criminal schemes, should *not* be tolerated in Pennsylvania. We therefore hold that where the defendant has admitted some of the elements of an offense and denied others, and where the denial of those other elements is not factually repugnant to the defense of entrapment, the trial court must, upon request and when there is evidence from which a jury could find that an entrapment has occurred, give an instruction to the jury on the defense of entrapment. In the present case, all of these requirements have been met. Accordingly, we conclude that the trial court erred in failing to give the requested instruction with regard to the February 26 incident.[8]

## II.

Appellant also complains that the trial court through various interruptions of trial counsel and other interjections into the trial proceedings, prejudiced the jury against him and thus prevented a fair and impartial trial. It is important to note that appellant does not here question the trial court's rulings on specific questions, but rather claims prejudice from the manner in which the court made these rulings, questions and other comments. Appellant points to several specific instances in the notes of testimony in support of his position.

The general rules regarding proper conduct of the trial judge are set forth in *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924). There our Supreme Court stated:

The practice of a judge entering the trial of a case as an advocate is emphatically disapproved. The judge occu-

7. For example, as mentioned in *Martinez, supra,* alibi and entrapment are two defenses which will always be inconsistent. A defendant cannot be "elsewhere" and be entrapped by police agents that he was not near.

8. Because we have concluded that appellant's first argument requires a new trial, we need not consider the issue raised with regard to the legality of the sentences imposed at Information number CC8001638A.

pies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality.

\* \* \* \* \* \*

"... [However, the judge] may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses ... may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto."

*Id.*, 278 Pa. at 508–509, 123 A. at 487 (quoting 9 *Am.Bar Ass'n Jour.* 450). *See also Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977) and *Commonwealth v. Nicholson,* 308 Pa.Super. 370, 454 A.2d 581 (1982). With these general principles in mind, we may now turn to appellant's specific allegations of undue interference.

Initially, appellant notes three separate instances in the course of counsel's opening statement where he was interrupted by the trial court. In the first of these, the trial court warned counsel away from stating that one of appellant's co-defendants did not know what "coke" was before she met the undercover police. The court indicated that this was argument and inappropriate in an opening statement. Second, the court requested that counsel simply outline his case and avoid detailed descriptions of police laboratory reports which he thought would be offered by the Commonwealth. Finally, the court prevented counsel from discussing the entrapment defense.[9]

While the trial court should refrain from unnecessary interference with the conduct of the trial, and allow counsel reasonable latitude to develop their respective posi-

9. As evident from his opening statement, trial counsel limited assertion of the entrapment defense to the February 26, 1980 incident. Thus, our earlier analysis renders academic any discussion of the trial court's instruction of counsel's remarks concerning entrapment.

tions, the opening statement as an important stage in a criminal trial must be subject to the oversight of the trial court. *Commonwealth v. Phillips*, 183 Pa.Super. 377, 132 A.2d 733 (1957); *Commonwealth v. Graham*, 248 Pa.Super. 406, 375 A.2d 161 (1977). It is clear that the interruptions cited by appellant were only designed to expedite the trial of the case by confining the opening statement to an outline of the defense and eliminating overly detailed descriptions of potential evidence. We do not consider this the type of involvement which would prejudice appellant's case, but rather a permissible exercise of judicial control to insure an orderly trial.

Appellant also complains of judicial interference during cross-examination of the undercover agent. At one point, after counsel had asked the witness whether he habitually used drugs, the trial judge sarcastically volunteered: "Do you, counselor?" Apparently in an attempt to put counsel's question in perspective, the court went on to say that he (the judge) took aspirin daily, implying that he was not thereby an habitual drug user. Appellant also complains that the trial judge interrupted counsel's questioning of the same witness as to his use of false names in connection with his duties as an undercover officer, and warned that counsel should not "castigate" the trooper with such questions.

██ Often in the course of a trial, the judge must address counsel. However, when the court does address counsel, it should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. "In addressing counsel, litigants, or witnesses, [the court] should avoid a controversial manner or tone." *Commonwealth v. Horvath*, 446 Pa. 11, 18, 285 A.2d 185, 188 (1971) (quoting *Canons of Judicial Ethics* ). *See also* Canon 3(A)(3) of the Pennsylvania *Code of Judicial Conduct* (effective Jan. 1, 1974).

 The law recognizes that, while judges must be vigilant to maintain the highest standards of judicial restraint, "... not every unwise or irrelevant remark made in the course of a trial by a judge, a witness or counsel compels the granting of a new trial." *Commonwealth v. Humphreys*, 267 Pa.Super. 318, 330–331, 406 A.2d 1060, 1066 (1979). "A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. England*, 474 Pa. 1, 16–17, 375 A.2d 1292, 1300 (1977) (quoting *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). We are satisfied that these remarks, which were directed solely at counsel and not appellant, did not reach such a level where it could be concluded that appellant was denied a fair and impartial trial.

The judgments of sentence imposed on Information number CC8002095A are affirmed. The judgments of sentence imposed on Information number CC8001638A are reversed and the case is remanded for a new trial on Information number CC8001638A.

Jurisdiction is relinquished.

SPAETH, President Judge, files a concurring and dissenting opinion.

McEWEN, J., joins in the concurring and dissenting opinion of SPAETH, President Judge.

SPAETH, President Judge, concurring and dissenting:

The principal issue on this appeal is whether the trial court erred in holding that the defense of entrapment is available only to a defendant who admits to *all* of the elements of the offense charged. I agree with the majority that the trial court did err, and I therefore concur in its order granting a new trial. However, I disagree with the majority's conclusion that the defendant must "admit to at least *some* of the elements [of the offense] charged." Majority op. at 1151. I believe the defense of entrapment

should be available even if the defendant admits to *none* of the elements of the offense charged.

I agree with the majority that in 18 Pa.C.S. § 313, our legislature adopted the objective test for entrapment, and that this test, which focuses entirely upon the conduct of the police, makes evidence of a particular defendant's "predisposition" to criminality irrelevant. *See* Majority op. at 1149; *Sherman v. United States*, 356 U.S. 369, 384, 78 S.Ct. 819, 826, 2 L.Ed.2d 848 (1958) (FRANKFURTER, J., concurring) (objective test "shifts attention from the record and predisposition of the particular defendant to the conduct of the police.")

In providing that entrapment is a defense, however, the legislature imposed no requirement that the defendant admit to any element of the offense charged. Thus, any such requirement must be imposed by us, and must be justified as being consistent with the legislature's purpose in enacting § 313. *See State v. McBride*, 287 Or. 315, 599 P.2d 449, 452 (1979) (court refuses to impose admission requirement where "statutory codification of the entrapment defense, contains nothing that would require the defendant to admit doing the proscribed act before being allowed the benefit of the defense, . . .") In fact, an admission requirement is *in*consistent with the legislature's purpose in enacting § 313. As Justice TRAYNOR explained in *People v. Perez*, 62 Cal.2d 769, 775, 44 Cal.Rptr. 326, 330, 401 P.2d 934, 938 (1965): "Entrapment is recognized as a defense . . . to deter . . . unlawful [police] conduct [and such a rule] cannot properly be restricted by compelling a defendant to incriminate himself as a condition to invoking the rule." *See also People v. D'Angelo*, 401 Mich. 167, 178, 257 N.W.2d 655, 660 (1977) ("[s]ince our [objective] test for entrapment does not look to the defendant's so-called predisposition to commit the crime charged but focuses instead upon the challenged governmental activity, the defendant will not be required to admit the criminal act in order to raise the entrapment issue.")

The reasoning in support of an admission requirement is that it is supposedly illogical to allow a defendant to deny

having committed an offense while at the same time claiming he was entrapped into committing it. *See, e.g., United States v. Williamson,* 482 F.2d 508, 515 (5th Cir.1973); *State v. Bruno,* 204 N.W.2d 879, 882 (Iowa 1973). This reasoning, however, is not persuasive.

In the first place, for all crimes containing an element of scienter, the defendant may admit doing the act, but, with no inconsistency, claim that he did not do so knowingly. *See, e.g., United States v. Greenfield,* 554 F.2d 179, 182–83 (5th Cir.1977), *cert. denied* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), (where physician denies he knowingly misprescribed controlled substances and claims he was entrapped, court finds no impermissible inconsistency); *State v. Branam,* 161 N.J.Super. 53, 390 A.2d 1186, 1191, *aff'd* 79 N.J. 301, 399 A.2d 299 (1979) ("we fail to find any real inconsistency where, as here, defendant contends that she intended to commit no crime and that the acts which might give rise to an inference of intent were induced by an agent of the State.")

In addition, where a defendant presents two mutually exclusive theories, the jury may believe that the evidence supports one, but not the other. In such a case, there is no inconsistency but simply alternative interpretations of the evidence; an inconsistency would occur only if the jury chose to adopt both alternatives. *See Hansford v. United States,* 303 F.2d 219–20 (D.C.Cir.1962) (where defendant denies knowingly selling heroin and also claims entrapment, court holds "the defenses were alternative but not inconsistent. It was consistent with defendant's denial of the transaction to urge that if the jury believed it did occur, the government's evidence as to how it occurred indicated entrapment.")

Moreover, even if there is a necessary inconsistency, that is not a reason to preclude the defense of entrapment. Obviously, the defendant will greatly damage his own credibility by following such a strategy, *see State v. Stone,* 629 P.2d 442, 446 (Utah 1981) (by urging "inconsistent factual contentions, a defendant's credibility would suffer immense-

ly"), but entrapment should not be an exception to the well-established rule that a defendant may assert inconsistent defenses. *See, e.g., United States v. Demma,* 523 F.2d 981, 985 n. 6 (9th Cir.1975) (collecting cases); Groot, *The Serpent Beguiled Me and I (Without Scienter) Did Eat— Denial of Crime and the Entrapment Defense,* 1973 U.Ill. L.F. 254, 259 n. 27 (collecting cases). As the Ninth Circuit has said, "The rule in favor of inconsistent defenses reflects the belief of modern criminal jurisprudence that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution." *United States v. Demma, supra* at 985. *See also State v. McBride, supra,* 287 Or. at 321, 599 P.2d at 452 ("[s]ince inconsistent defenses are allowed in criminal cases generally, there is no justification for prohibiting them in cases involving entrapment.")

And finally, there are serious problems of fairness, which may approach constitutional dimension, with a rule that relieves the government of its burden of proving each element of a crime beyond a reasonable doubt. *See United States v. Demma, supra* at 986; Groot, *supra* at 269–75. As Justice TRAYNOR wrote in *People v. Perez, supra* 62 Cal.2d at 775, 44 Cal.Rptr. at 330, 401 P.2d at 938, "To compel a defendant to admit guilt as a condition to invoking the defense of entrapment would compel him to relieve the prosecution of its burden of proving his guilt beyond a reasonable doubt at the risk of not being able to meet his burden of proving entrapment."

For all these reasons, I favor the adoption of the rule stated by the Supreme Court of Oregon in *State v. McBride, supra* 287 Or. at 317, 599 P.2d at 450: "A criminal defendant is entitled to the defense of entrapment without being required to concede that she committed the crime or any of the elements of the crime."

Despite its reliance on *People v. Perez, supra,* and *State v. McBride, supra,* both of which adopt the "no elements" rule that I favor, the majority adopts the rule enunciated by the New Mexico Supreme Court in *Martinez v. State,* 91 N.M. 747, 580 P.2d 968 (1978), "that where the defendant

has admitted some elements of an offense, although not all, and where the denial of all other elements is factually not repugnant to the defense of entrapment, the trial court must issue an instruction on entrapment." *Id.* at 750, 580 P.2d at 971. However, the court in *Martinez* advanced no reasons to explain its choice of rule; I can think of none; and the majority suggests none.

It seems evident that in a state, like Pennsylvania, that follows the objective test, a requirement that the defendant make an admission is irrelevant. In addition, the requirement must prove inefficient. One of the advantages of the objective test is that it provides a fixed standard for evaluating police conduct, in contrast to the subjective test, which delves into the particular defendant's "predisposition" to criminality. Under *Martinez*, however, the court must determine, on a case-by-case basis, whether the defendant's denial is "factually ... repugnant to the defense of entrapment." This appears to me to be an open invitation to litigation in support of no discernible policy objective.[1]

1. Because I believe that appellant's first argument, that he was improperly denied his requested point for charge on entrapment, requires a new trial, I should not reach either his second argument, that the trial judge unduly interfered with the presentation of his defense, or his third, that his sentence was illegal.