Commonwealth *v.* Horvath, Appellant.

Argued September 28, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Wendell G. Freeland,* with him *David L. Lichtenstein,* and *Lichtenstein & Bartiromo,* for appellant.

*Robert C. Reed,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

This is an appeal from the order of the Superior Court affirming the judgment of sentence entered against appellant on a finding of guilty of malicious prowling and loitering at night, as defined by the Act of June 24, 1939, P. L. 872, §418, added May 27, 1949, P. L. 1900, §1, 18 P.S. §4418. *Commonwealth v. Horvath,* 218 Pa. Superior Ct. 886, 279 A. 2d 217 (1971).

The record discloses that state troopers, on the basis of a tip that a burglary was planned for the residence of Mr. and Mrs. Theodore Young, Jr., in Chippewa Township, began a stakeout of the premises at 12:30 a.m., July 28, 1968. Appellant and his codefendant were seen getting out of a stopped car and running between two houses, a distance of 150 to 200 feet from the Young residence, and then going directly to the rear of the Young residence. After stopping at the rear window, one of the men went down the rear cellar steps of the residence. The two men were then seen standing at the rear of the residence for a few minutes, and then continuing to the front. The state trooper observing this, having lost sight of the two men, then went to his police car and radioed for assistance. As he returned to the scene, he came upon the two men coming out of the bushes twenty feet from where he had originally been positioned. The two men were placed under arrest.

Later, after the defendants had been taken to the state police barracks, a search in the area of the Young

residence near where the two men had been arrested disclosed a pry bar, a handy bar, and a pair of gloves.

The two men were originally charged with burglary and the possession of burglary tools. However, as one state trooper testified on cross-examination, when the crime laboratory could not identify the fingerprints on the tools as belonging to either defendant, and since the defendants had never been observed in actual possession of the tools, these charges were dropped and the defendants were charged only with malicious loitering.

Charles Miller, appellant's codefendant, attempted to explain his presence and that of appellant on the Young property by testifying that while hitchhiking they had been picked up, robbed, and forced from the car near the Young premises.

In his appeal, appellant urges four reasons why his conviction should be reversed. Since two of his allegations of trial error have merit, we will not deal with his challenge of the constitutionality of what he alleges to be Pennsylvania's "over-broad" and "vague" malicious loitering statute.

During the Commonwealth's case in chief, a state trooper testified that "the defendants were originally charged with burglary because the burglary tools were found in the area where the defendants were—when the defendants were placed under arrest." The defense immediately moved for a mistrial. The court denied the motion, but directed the jury to disregard that statement.

However, the problem was compounded when the judge, in his charge, after restating the defense contention that the defendants were "rolled" and abandoned on the Young property, and restating the fact that the defendants had told this to the state troopers at the time of their arrest, reminded the jury: ". . .

and you recall they were arrested and charged with burglary."

Such a repetition by the court could not help but emphasize the importance of the burglary arrests to the jury. As we said in *Commonwealth v. Pearson*, 427 Pa. 45, 233 A. 2d 552 (1967), at page 52: "To compound a trial error by emphasizing the tainted evidence in the jury charge would probably, by itself, be sufficient under Chapman [v. California, 386 U.S. 18] to render the error not harmless." See also *Commonwealth v. Wright*, 444 Pa. 536, 282 A. 2d 323 (1971).

The Commonwealth, citing *Commonwealth v. Phillips*, 183 Pa. Superior Ct. 377, 132 A. 2d 733 (1957), urges that it was not error to refuse the motion for a mistrial or a new trial, because the state trooper's remarks, although irrelevant, did not prejudice the defendants. Rather, according to the Commonwealth's argument, since the state trooper admitted on cross-examination that all burglary charges were dropped because there was no evidence to prove that the defendants ever actually possessed the burglary tools [the fingerprints on the tools could not be identified as those of the defendants] the reference to the burglary charges helped rather than hurt the defendants. We cannot accept this argument. The Commonwealth's whole theory of this case was that appellant and his co-defendant were in the process of committing a burglary. As the Commonwealth said in its brief, in meeting another argument raised by the defendants—that the burglary tools should not have been admitted into evidence because of the absence of a link between the tools and the defendants: "One of the elements of crime which the Commonwealth had to prove was malice. This has been defined as a showing of intent to do a wrongful act or proof of the state of mind of a person who does a wrongful act. *Commonwealth v. Williams*,

185 Pa. Superior Ct. 312 (1958). The defense advanced by the defendants was that they were present at this house for a lawful purpose. The Commonwealth's evidence, specifically these exhibits in question, would tend to establish that on the contrary the defendants were there for an unlawful purpose, that is, the commission of the crime of burglary."

By testifying as to the Commonwealth's previous attempt to charge the defendants with burglary, the state trooper was putting in irrelevant evidence which served to emphasize the Commonwealth's theory of this case. By repeating the improper testimony of the state trooper, the trial court was re-emphasizing the burglary charges, almost as if they were somehow relevant to a determination of why the appellant and his co-defendant were on the Young property and why Miller's own explanation was not to be believed. There can be no doubt that appellant was severely prejudiced and deserves a new trial.

Appellant's first trial was tainted for an additional reason, which also requires reversal. Before this trial began, the judge made the following spontaneous, irrelevant and obviously prejudicial comment to the jury:

"The Court: Before we proceed, members of the jury, I want you to know that, as far as this Judge is concerned, I have waited for a case since 3:00 o'clock yesterday afternoon. At noon yesterday, I advised the Court Administrator that the case I was then trying would be completed by 3:00 o'clock, and for some reason or another—and I finished the case promptly at 3:00 o'clock. She was notified that I was prepared to go ahead and try another case. I got no further case yesterday, and I have been sitting in Chambers all morning until now, ten minutes to 3:00. It was only stirring up things just a few minutes ago that we finally get this jury.

"I want you to know that we have a Court Administrator; that Court Administrator has a secretary. The District Attorney has five assistants. He has Mr. Cashdollar as Chief County Detective, a former Federal Bureau Investigation man, an experienced man, and for some reason or another I can't find the answer; I have tried to find it. I don't have the power to enforce it. Why these things go on term after term, I don't know, and I want you to know it, and I want you to know it is not this Judge's fault. If I could do something about it, I would. I am the President Judge of the Orphans' Court. I only assist in the Quarter Sessions Court. I can't appreciate this waste of time.

"Now, I see, in going over this list, Mr. Hudacsek, who represents these two young men, has any number of other cases on the list. I don't know whether they have all been disposed of or not or what the situation is.

"I also note that his appearance was entered in this case on the 17th of September, which is contrary to our rules. You are supposed to have your appearance entered the date the Grand Jury returns a True Bill, or even before that, but there is a man by the name of Dickenstein as being the attorney. Why he isn't here, why they have taken all day up to now to select this jury, somebody will have to give me the answer.

"Now, since the issue is joined,—

"Mr. Hudacsek: May I say something?

"The Court: Yes.

"Mr. Hudacsek: So that it does not unduly prejudice my clients, I had entered my appearance in this case the day I met them, the day they were forwarded to me by Sammy David Dickenstein of Allegheny County. Contrary to the rules or otherwise, that is when I met them, and that is when they first consulted me.

"The Court: Why was the jury not selected this morning? Can you answer that?

"Mr. Hudacsek: Yes. I had another matter being disposed by the Court. That was taken care of this morning.

"The Court: How long did it take?

"Mr. Hudacsek: Twenty minutes.

"The Court: What did you do the rest of the morning?

"Mr. Hudacsek: I waited. This afternoon I was before Judge Scalera. I was there on another matter.

"The Court: How long did it take?

"Mr. Hudacsek: About twenty minutes.

"The Court: Those are the answers you get, members of the jury.

"Mr. Hudacsek: I have been here seven consecutive days.

"The Court: You may swear the jury."

This conduct by the trial court falls far below the standards set forth in the second paragraph of Canon 15 of the *Canons of Judicial Ethics*: "Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone."

Our system of submitting legal matters, including, as in the instant case, the determination of whether the state has the right to deprive a man of his liberty, to a fair impartial jury depends on strong efforts by all concerned to keep the atmosphere in which the case is tried fair and impartial. When a judge subjects counsel for one of the litigants to undeserved oral criticism, the delicate balance upon which the creation of such an atmosphere depends may be affected. The jury is bound to remember the incident and the danger is too great that the party represented by the lawyer thus criticized may be prejudiced.

Judgment of sentence reversed and new trial granted.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.