**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael Leon HUDSON, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 20, 2002.

Filed March 18, 2003.

Martin A. Dietz, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., and Francesco L. Nepa, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: FORD ELLIOTT, ORIE MELVIN, and GRACI, JJ.

OPINION BY GRACI, J.:

¶1 Appellant, Michael L. Hudson ("Hudson"), appeals from a judgment of sentence entered in the Court of Common Pleas of Allegheny County on June 15, 1999. For the reasons set forth below, we affirm the judgment of sentence.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 We adopt the following factual recitation set forth in the trial court's opinion of December 17, 2001:

On February 16, 1997, three men, at gun point, forced their way into a home occupied by Mabel McKenzie, Oneaca Bonifate, Valerie Budzinski and Tiffany Eger, located on Graham Street in the Garfield Section of the City of Pittsburgh. There were also a number of minor children who resided in the residence. The three men, with the use of a handgun and threatening remarks, corralled all of the occupants of the residence into the dining room area and required that they either sit or lay on the floor. One of the men kept watch over the occupants of the residence while the other two ransacked the house looking for various items of personal property. After approximately a half hour filled with threats, during which the firearm was pointed at various people in the residence, including the minor children, the three men exited the residence with various items which belonged to the occupants.

The police were immediately called and an initial report was taken by Officer Gregory Woodhall of the City of Pittsburgh Police. Thereafter, the incident was assigned to two Pittsburgh detectives who conducted interviews at the residence. Subsequent to the interviews, one of the occupants contacted the detectives and indicated that a

friend, identified at trial as "Steve," had heard on the street that three individuals, defendant, Michael Hudson, (hereinafter referred to as "Hudson"), defendant, Ronald Jenkins, (hereinafter referred to as "Jenkins"), and Jacob Hornbuckle, (hereinafter referred to as "Hornbuckle"), were involved in the incident. With this information, the detectives created a photo array and presented the photo array to three of the four adult occupants of the residence. The occupants of the residence were able to identify Hudson, Jenkins and Hornbuckle as the perpetrators involved. Jenkins was arrested and charged with four counts of robbery, one count of burglary and one count of criminal conspiracy. Hudson was also arrested and charged with one count of burglary [18 Pa.C.S. § 3502(a)], four counts of robbery [18 Pa.C.S. § 3701(a)(1)], one count of criminal conspiracy [18 Pa.C.S. § 903(a)], and four counts of simple assault [18 Pa. C.S. § 2701(a)].

Opinion, 12/17/01, at 1–2 (footnote omitted).

¶3 In March, 1999, Hudson attempted to enter into a plea agreement, which the trial court rejected following a hearing. Hudson's attorney immediately requested permission to present the proposed plea agreement to a different judge. The trial court denied the request and Hudson proceeded to trial. Following a joint trial in April, 1999, Hudson and Jenkins were convicted by a jury of all charges filed against them. Leslie Perlow, Esq., represented Hudson at all times up through and including sentencing.

¶4 At a sentencing hearing on June 15, 1999, the trial court sentenced Hudson as follows: on count one (burglary), ten to twenty years imprisonment; count two (robbery), ten to twenty years; count

three (robbery), ten to twenty years; and count six (conspiracy), five to ten years. The trial court ordered these sentences to run consecutively. The court also sentenced Hudson to a concurrent term of incarceration of three to six months on an unrelated narcotics offense.[1] Hudson's aggregate sentence totaled thirty-five to seventy years. New counsel was appointed and post-sentence motions were filed on Hudson's behalf. The trial court denied Hudson's motions and this appeal followed.

¶ 5 Hudson asserts the following claims on appeal:

I. The trial court denied [Hudson] a fair and impartial trial by making prejudicial remarks directly to the jury

II. [Hudson] received ineffective assistance of counsel because his trial counsel made a statement that lead [sic] the trial court to admonish trial counsel before the jury and/or trial counsel failed to request a mistrial after the trial court made several prejudicial remarks to the jury which deprived [Hudson] of a fair and impartial trial

III. The trial court erred by, without placing sufficient reasons on the record and without explaining the appropriate sentencing guideline ranges, sentencing [Hudson] beyond the standard range which sentence was unreasonable under the circumstances of this case [and]

IV. The trial court erred by refusing to recuse himself and allow [Hud-

son] to plead guilty before a different judge

Brief for Appellant, at i.

## II. DISCUSSION

¶ 6 Hudson's first two issues concern a comment by his attorney, Leslie Perlow, Esq., at the conclusion of her cross-examination of Commonwealth witness Valerie Budzinski, one of the residents of the apartment where the robbery occurred and a victim of the crimes. Immediately preceding Ms. Budzinski's testimony, two of the other adult victims, Mabel McKenzie and Oneaca Bonifate, had each identified Hudson as one of the perpetrators. During cross-examination by Ms. Perlow, Ms. Budzinski admitted that she had not been able to describe the perpetrators after the incident, nor could she positively identify Hudson in court as one of her assailants. N.T. Trial, April 19–22, 1999, at 159:7–18. After some additional questioning, Ms. Perlow concluded her cross-examination of Ms. Budzinski by stating, "I appreciate your honesty." *Id.* at 161:3.

¶ 7 After the jury had been excused for the day, the Commonwealth's attorney lodged an objection to Ms. Perlow's remark as an unfair and implicit attack on the credibility of Ms. McKenzie and Ms. Bonifate, who had both identified Hudson as one of the perpetrators. *Id.* at 163:9–17. The trial judge admonished Ms. Perlow for making the "uncalled for" remark and announced that he would address the jury the following day. *Id.* at 163:20–21.

¶ 8 At the commencement of the proceedings the next day, the trial court instructed the jury as follows:

Yesterday, there was a comment made my Ms. Perlow, which I'm going to

---

1. Hudson was charged at Criminal Complaint No. 9801541 with two counts of violating the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113, and related misdemeanor and summary offenses. Hudson entered a plea of guilty to these charges at his sentencing hearing on June 15, 1999.

speak about before we start. Everybody in this Courtroom plays a role. Ms. Nagy's our Court Reporter. She's responsible for making sure the record is maintained and is accurately transcribed. Mr. Clark is the Prosecutor whose job it is to take the cases brought into the system and to put forth that information to a jury or, if a non-jury, to myself.

Ms. Perlow and Mr. Kalocay are Defense Counsel.[2] They represent an individual who's accused. Their job is to put forward their information and make sure that the evidence is put in properly and to represent their clients accordingly. In a jury trial, my sole function is to make sure that the evidence is given to you properly and to make rulings on objections. The function of a jury is fact-finder. As fact-finder, you're going to pass on credibility.

The gratuitous statement by Ms. Perlow yesterday, thanking somebody for their honesty, was precisely that, and it was offensive to me. And I think it should be offensive to you because she was intending or unintentionally going into your particular province as fact-finder. So I'm going to ask you disregard that remark, and we have already dealt with Ms. Perlow.

With that, Mr. Clark, ready [to] call your next witness?

*Id.* at 164:5–165:7.

¶ 9 Hudson first argues that the trial court's instructions deprived him of a fair and impartial trial. He contends that the trial court essentially instructed the jurors to be offended by Ms. Perlow's statement and that the court's remarks effectively bolstered the credibility of Ms. McKenzie and Ms. Bonifate at the expense of Ms. Budzinski's credibility. Hudson also suggests that the trial court's exhibition of hostility toward defense counsel unduly influenced the jury's perception of him and his case.

¶ 10 "A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error." *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116, 1127 (2000) (citing *Commonwealth v. Ragan,* 560 Pa. 106, 743 A.2d 390, 397 (1999)). "A trial judge is not required to remain mute when counsel speaks of irrelevant and prejudicial matters. Counsel may properly be admonished on such occasions without nullifying the entire trial as long as the trial judge does not display partiality or prejudice by his conduct, manner of speech, or choice of language." *Commonwealth v. Phillips,* 183 Pa.Super. 377, 132 A.2d 733, 737 (1957) (citations omitted). "An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial." *Id.* at 736 (citations omitted).

¶ 11 Ms. Perlow's remark was clearly improper, and the trial court was entitled, if not obligated, to caution the jury regarding that impropriety. In our view, the trial court's instructions in that regard reflect an accurate assessment of the duties of the participants in a jury trial. Most importantly, the court reminded the jurors that, as "fact finder," they are responsible for passing on issues of credibility. N.T. Trial, April 19–22, 1999, at 164:21–22. Although the judge was critical of Ms. Perlow, his criticism was directed toward her individually and not toward Hudson. We

---

**2.** The reference is to Michael Kalocay, Esq., counsel to co-defendant Ronald Jenkins.

fail to see how the court's remarks can be viewed as projecting an adverse inference upon the defendant or his case. The instructions did not, as Hudson argues, reflect the court's opinion as to the credibility of Ms. Budzinski or any other witness. The effect upon the jury of either Ms. Perlow's remark or the trial court's instructions, if there was any at all, would have been slight. We have no doubt that this isolated incident could not have had a substantial influence on the outcome of the case, especially given the overwhelming evidence of Hudson's guilt. On this record, there was no prejudice to Hudson and his argument fails.

¶ 12 Hudson next argues that Ms. Perlow rendered ineffective assistance by (1) making the challenged statement to Ms. Budzinski, and (2) failing to request a mistrial after the trial court's allegedly prejudicial curative remarks. Since Hudson is raising these ineffective assistance of counsel claims on direct appeal, we must begin with a discussion of our Supreme Court's recent pronouncement in *Commonwealth v. Grant*, 813 A.2d 726 (Pa.2002).

¶ 13 In *Grant*, the Supreme Court held that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738.[3] Underlying the rule announced in *Grant* is the Court's observation that "time is necessary for a petitioner to discover and fully develop claims related to trial counsel ineffectiveness." *Id.* at 737. As a result, "the record may not be sufficiently developed on direct appeal to permit adequate review of ineffectiveness claims[.]" *Id.* Because "appellate courts do not normally consider issues that were

not raised and developed in the court below[,]" *id.*, the *Grant* court reasoned that "[d]eferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Id.*

■ ¶ 14 *Grant* leaves one open question however: may an appellate court address the merits of an ineffective assistance claim when the claim was, as is the case here, properly raised in a timely post-sentence motion filed in and ruled upon by the trial court in conformity with Pa. R.Crim.P. 720? We answer that question affirmatively. *Grant* is concerned with the difficulty an appellate court faces when trying to resolve ineffectiveness claims without the benefit of an adequately developed record. If an appellant obtained new counsel after verdict, new counsel could seek a new trial based on the ineffective assistance of trial counsel in a timely-filed post-sentence motion under Pennsylvania Rule of Criminal Procedure 720(B)(1)(a)(iv). Pa.R.Crim.P. 720(B)(1)(a)(iv). The trial court would then have to determine if a hearing was required or if the claim could be resolved on the existing record. Pa.R.Crim.P. 720(B)(2)(b). Thereafter, the trial court could resolve the ineffectiveness claim in the time frame established by the rule. Pa.R.Crim.P. 720(B)(3). If that issue was then raised on direct appeal, this court could resolve it. That situation is different from the one governed by *Grant* where the issue of trial counsel's ineffectiveness was not raised in a timely post-sentence motion but was, instead, raised for the first time

---

3. The *Grant* court noted the possibility that, when properly asked to do so, it might announce two limited exceptions to its general rule: where an appellant "raise[s] an allegation that there has been a complete or constructive denial of counsel or that counsel has breached his or her duty of loyalty." *Grant*, 813 A.2d at 738, fn. 14. The Supreme Court has yet to announce either of these exceptions. If it were to do so, neither would be implicated here.

on appeal. *Grant* simply has no application where the issue was properly raised and decided by the trial court before the direct appeal process started.

¶ 15 This is the exact scenario presented in the case *sub judice*. As we indicated above, the fact that the trial court conducted a hearing on and addressed (and rejected) Hudson's ineffective assistance and other post-sentencing claims allays the concerns of our Supreme Court in *Grant* and provides us with an adequate record on appeal. Therefore, we shall proceed to the merits of Hudson's ineffective assistance of counsel claims.

¶ 16 Since these ineffective assistance of counsel claims were presented to and ruled upon by the trial court in post-sentence motions, we review that court's denial of relief by determining if its findings are supported by the record and its order is free of legal error. This is the standard we generally apply when reviewing a PCRA court's dismissal of a post-conviction petition. *See Commonwealth v. Kutnyak,* 781 A.2d 1259 (Pa.Super.2001). Our role here, given the procedural posture of this case, is similar to that where we examine a PCRA court's denial of relief on a claim of ineffectiveness of counsel. Accordingly, we will apply the same standard.

■ ¶ 17 The legal standard applicable to ineffective assistance of counsel claims is well settled.

> To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable

basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Wharton,* 811 A.2d 978, 986 (Pa.2002) (citations omitted).[4] Our review demonstrates that the trial court committed no error in applying this standard.

¶ 18 The trial court determined that Hudson suffered no prejudice as a result of the court's curative instructions to the jury following Ms. Perlow's improvident remark since, in the trial court's opinion, the result would have been the same had the instructions not been given. Opinion, 12/17/01, at 10. We agree. As a result, Hudson's claim fails to satisfy the third prong of the standard set forth in *Wharton*. Moreover, the trial court's curative instructions were, as we have already discussed, proper in all respects. Therefore, there is no merit to Hudson's argument that trial counsel should have raised an objection. *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716, 720 (1992) ("[C]ounsel can never be found ineffective for having elected not to raise a meritless claim.") (citations omitted).

■ ¶ 19 We also agree with the trial court's determination that Hudson was in no way prejudiced by the substance of Ms. Perlow's remark to Ms. Budzinski. Opinion, 12/17/01, at 9, 10. Indeed, if there was any effect upon the jury it would have been to Hudson's benefit since the implication was that Ms. Budzinski, who could not positively identify Hudson as one of the

---

4. The standard applicable to claims of ineffective assistance of counsel raised on direct appeal is the same as that applied to such claims raised under the PCRA. *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 332 (1999).

perpetrators, was more credible than the preceding witnesses who had positively identified Hudson. Accordingly, we reject Hudson's second claim of ineffective assistance of counsel.

¶ 20 In his third issue, Hudson argues that the trial court abused its discretion in imposing an aggregate sentence of thirty-five to seventy years in prison. Hudson does not contend that the sentence imposed was illegal. Rather, he claims that the trial court failed to acknowledge, on the record, the appropriate sentencing guideline ranges and its reasons for exceeding those ranges. Brief for Appellant, at 33. "[T]his type of claim goes to the discretionary aspects of sentence." *Commonwealth v. Davis*, 737 A.2d 792, 798 (Pa.Super.1999). The Pennsylvania Rules of Appellate Procedure explicitly require that:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter *shall* set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement *shall* immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f) (emphasis added).

¶ 21 Hudson has failed to include the requisite Rule 2119(f) statement. While this does not automatically waive his claim on appeal, " 'we may not reach the merits of [the] claims' where the Commonwealth has object[ed] to the omission of the statement." *Commonwealth v. Farmer*, 758 A.2d 173, 182 (Pa.Super.2000), *reargument denied, appeal denied*, 565 Pa. 637, 771 A.2d 1279 (2001) (citation omit-

ted). The Commonwealth has noted its objection to the omission of the Rule 2119(f) statement and, accordingly, we find that Hudson has waived his challenge to the discretionary aspects of his sentence.

¶ 22 Finally, Hudson claims that the trial court abused its discretion in denying his request to present his rejected plea agreement to a different judge. Hudson claims that this decision was equivalent to a denial of a request that the trial judge recuse himself from the case. We first note our disagreement with Hudson's characterization of his request as a recusal motion.

> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged.

*Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998), *cert. denied, Abu–Jamal v. Pennsylvania*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999) (citations omitted). Hudson did not direct a motion for recusal to the trial judge following the court's rejection of his plea agreement, and we find no merit to his argument that a recusal motion can somehow be inferred from his request to present the plea to a different judge.[5]

¶ 23 With regard to Hudson's failed plea agreement, the Pennsylvania Rules of Criminal Procedure state unequivocally that "[t]he judge may refuse to accept a plea of guilty[.]" Pa.R.Crim.P. 590(A)(3). "The Pennsylvania Rules of

---

5. Even if we were to accept Hudson's premise, he has not presented the slightest indicia of bias, prejudice, or unfairness on the part of the trial judge. Dissatisfaction with the judge's rejection of his plea agreement certainly does not qualify.

Criminal Procedure grant the trial court broad discretion in the acceptance and rejection of plea agreements." *Commonwealth v. Rosario,* 418 Pa.Super. 196, 613 A.2d 1244, 1249 (1992). "There is no absolute right to have a guilty plea accepted." *United States ex rel. Culbreath v. Rundle,* 466 F.2d 730, 735 (3d Cir.1972). Nor is there an absolute right to present a rejected plea agreement to a different judge, and Hudson cites no authority in support of that proposition. Moreover, we agree with the trial court that acceptance of the plea agreement by another judge of the court of common pleas would have violated the well-settled legal principle that "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995) (citations omitted).

¶ 24 Judgment of sentence affirmed.

¶ 25 FORD ELLIOTT, J., files a concurring statement.

CONCURRING STATEMENT BY FORD ELLIOTT, J.:

¶ 1 While I join the disposition on the merits, I write separately to concur only in the majority's analysis of *Commonwealth v. Grant.* I believe *Grant* allows this court to resolve ineffectiveness claims on direct appeal as long as there is an adequate record on the issue before this court. This is true regardless of whether the issue has been addressed by the trial court in the first instance.