J-A01003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM DAULTON | |
| Appellant | No. 179 WDA 2016 |

Appeal from the Judgment of Sentence November 10, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000263-2015

BEFORE: BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 22, 2017**

William Daulton appeals from the aggregate judgment of sentence of thirty to sixty years incarceration imposed following his jury convictions for rape of a child, rape by forcible compulsion, and related sexual offenses. We affirm.

We adopt the trial court's recitation of the facts.

> Briefly, the evidence presented at trial established that when [C.E.] was 10 years old, the Defendant, her step-father, asked her to massage his back and after she did so, he placed her hand on his penis. He then pulled her into the bathroom, pushed her onto the floor, pulled down her pants and had vaginal intercourse with her. Afterwards, she was instructed not to tell her mother. The assaults continued at various times and in various rooms of the house, with the Defendant pulling her pants down, bending her over a chair or the washing machine and penetrating her from behind.

---

* Retired Senior Judge assigned to the Superior Court.

The family moved several times and [C.E.] testified that the assaults occurred several times in each new house. At various times in each residence, [C.E.]'s younger sisters, [S.G.] and [C.G.], walked in on the assaults and saw the Defendant with his pants off moving back and forth against [C.E.], but were too young to understand what they were seeing. At one point, [C.G.] told her mother what was happening, but her mother did nothing to stop the abuse. Eventually the family moved to California and [C.E.], [S.G.], and [C.G.] were removed to foster care due to unrelated issues with their mother. Once in foster care, [C.E.] told her foster mother what had been happening and her foster mother contacted the authorities.

Trial Court Opinion, 6/28/16, at 2-3. At the time of trial, C.E. was seventeen years old. N.T., 8/11-13/15, at 30.

Appellant proceeded to a jury trial on August 11, 2015. The jury returned its verdict and Appellant was sentenced as previously set forth. He filed timely post-sentence motions, which were denied. Appellant filed a timely notice of appeal complied with the trial court's order to file a concise statement of matters complained of on appeal. The trial court has filed its opinion in response and the matter is now ready for our review. Appellant raises three issues for our consideration.

I. Did the trial court abuse its discretion by refusing to allow the defense to impeach a main eyewitness with her prior inconsistent statements denying abuse by the Appellant?

II. Did the trial court abuse its discretion by allowing a police officer to present expert testimony when that person was not qualified as an expert and no expert report was provided to the defense?

III. Did the trial court deprive the Appellant of a fair and impartial trial when, throughout the trial, the court ridiculed defense counsel before the jury, objected to evidence for the

Commonwealth, failed to allow the defense to state objections and make a proper record, failed to make the Commonwealth state reasons for its objections, failed to allow defense counsel to impeach main witnesses, and refused to allow defense counsel to properly prepare for an expert witness who was never even qualified as an expert?

Appellant's brief at 6.

The first allegation of error pertains to Appellant's attempt to elicit from C.G. an admission that, when she spoke to social workers in California, she denied all allegations of sexual abuse. The challenged exchange was as follows:

Q.   And you would talk with [social workers] about whether or not you were ever abused or neglected or sexually abused, correct?

A.   Correct.

Q.   Isn't it true that you told these social workers in 2013 that you denied all abuse and neglect and reported that you were not afraid of your mother or stepfather William Daulton?

[COMMONWEALTH]: Your Honor, I'm going to object. She is not the victim in this case.

[APPELLANT]: This is a prior inconsistent statement.

THE COURT: Sustained.

[APPELLANT]: Your Honor, Rule 803.1 covers prior inconsistent statements. If she made them, I'm allowed to get into them not for substantive evidence but for impeachment. If she denied any abuse before, the jury should be allowed to hear it.

THE COURT: The objection is sustained.

- 3 -

N.T., 8/11-13/15, at 113-14.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Shull*, 148 A.3d 820, 845 (Pa.Super. 2016) (citation omitted). Impeachment of witnesses through prior inconsistent statements is governed by Pennsylvania Rule of Evidence 613.[1]

> **(a) Witness's Prior Inconsistent Statement to Impeach.** A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request the statement or contents must be shown or disclosed to an adverse party's attorney.
>
> **(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement.** Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,
>
> > (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
> >
> > (2) the witness is given an opportunity to explain or deny the making of the statement; and
> >
> > (3) an adverse party is given an opportunity to question the witness.

---

[1] Pennsylvania Rule of Evidence 803.1, cited by Appellant at trial in response to the objection, permits the use of prior inconsistent statements for substantive purposes, provided one of three conditions is met. Appellant's brief correctly discusses Rule 613.

>This paragraph does not apply to an opposing party's statement as defined in Rule 803(25).

Pa.R.E. 613.

Preliminarily, we note that the Commonwealth claims that Appellant is obligated to prove the existence of a prior inconsistent statement. "[C]ontrary to the premise of the appellant's argument, the record does not establish that the victim's sister had made a prior inconsistent statement at all." Commonwealth's brief at 11.

This omission is not an impediment to our review. Whether or not the record demonstrates that C.G. actually made a prior inconsistent statement is immaterial to Appellant's claim. Rule 613(a) and 613(b) serve different purposes. C.G. testified on direct examination that she observed Appellant raping C.E. Accordingly, Appellant was permitted, pursuant to Rule 613(a), to ask C.G. whether she had previously denied observing Appellant raping C.E. If C.G. were to agree, that admission would directly impeach her direct examination irrespective of any extrinsic evidence thereof. "**An inconsistent statement may be proved by getting the witness on the stand to admit making it**. But where, as here, the witness does not admit making the inconsistent statement, it may be proved by extrinsic evidence[.]" ***Commonwealth v. Brown***, 448 A.2d 1097, 1103-04 (Pa.Super. 1982) (emphasis added). In this case, C.G. neither admitted nor

denied making the statement. Hence, the Commonwealth does not address Appellant's actual complaint.

Nevertheless, we find no error. The prosecutor's objection to this question stated, "[C.G.] is not the victim here." This objection thus did not seek to preclude Appellant from cross-examining C.G. regarding prior inconsistent statements; instead, it merely objected to the phrasing of the question.

We agree that the objection was properly sustained on this ground.[2] Appellant's framing of the question was highly ambiguous: "Isn't it true . . . that you denied all abuse and neglect[?]" N.T., 8/11-13/15, at 113. The question at issue ambiguously referred to all abuse and neglect, which would include a prior statement regarding Appellant raping C.G., but also abuse inflicted upon C.G. herself. Indeed, the challenged question directly followed Appellant's query, "And you would talk with them about whether or not **you** were ever abused or neglected or sexually abused, correct?" ***Id***. (emphasis added). Following the trial court's ruling, nothing prevented Appellant from asking a more focused question. We therefore find that the trial court did not abuse its discretion in sustaining the objection. ***Commonwealth v. O'Drain***, 829 A.2d 316, 322, n.7 (Pa.Super. 2003) (this Court may affirm if there is any basis on the record to support the trial court's action).

---

[2] The trial court's opinion does not address this particular claim.

Appellant's second issue is that the trial court improperly permitted the Commonwealth to present an expert witness opinion through Detective Sylvester Wright, employed by the City of Pittsburgh Police's Sex Assault division. The entirety of the challenged testimony was as follows.

Q. In your experience as investigator in child sex assault cases, is it more common that children wait weeks, months, or even years before reporting a sexual assault?

A. Yes.

Q. What are some of the reasons that you have determined to be the cause of the delay?

A. Scared, unsure of themselves, no support, embarrassed.

N.T., 8/11-13/15, at 145. This testimony was introduced over Appellant's objection. The Commonwealth's direct examination of Detective Wright started as follows:

Q. How are you currently employed?

A. Pittsburgh Police.

Q. With what division?

A. Sex Assault.

Q. How long have you been employed in that capacity?

[APPELLANT]: Your Honor, we will stipulate to the qualifications if it will save time.

[COMMONWEALTH]: That's fine.

N.T., 8/11-13/15, at 142. Questioning then resumed, and the Commonwealth asked how Detective Wright received information from

- 7 -

authorities in California and whether he investigated the residences in Pittsburgh for evidence. *Id*. at 142-44. The Commonwealth then segued into the topic of delayed reporting. Appellant then objected.

> Q. In your experience, do you often have children report a sex assault right away?
>
> A. No.
>
> Q. Have you found in your experience that it is more common for them to go several weeks, months or even years before they report sex assault?
>
> [APPELLANT]: Objection, Your Honor. I believe now the district attorney is getting to expert opinion testimony.
>
> THE COURT: I thought you stipulated to his qualifications.
>
> MR. LEFF: As to a detective, but [*sic*] as an expert in this field. Moreover, the rules require that I be given a report if they wanted to offer those opinions.
>
> THE COURT: Overruled.

*Id*. at 144-45. The trial court's opinion finds that counsel's stipulation waived any claims regarding the testimony.

> [D]efense counsel stipulated to Detective Wright's qualifications. Given the defense presented, it was not unreasonable to expect that the Commonwealth would attempt to question Detective Wright regarding his experience with child victims, and if trial counsel intended to make a serious challenge to such testimony by arguing that Detective Wright lacked the qualifications and experience to answer such a question, then he should not have volunteered to stipulate to the detective's qualifications. As with the issues discussed more fully below, the instant claim is reflective of defense counsel's trial practice skills and does not actually concern any errors made by this Court. This claim must fail.

Trial Court Opinion, 6/28/16, at 7.  Our standard of review is well-settled.

> The admission of expert testimony is a matter of discretion for the trial court, and will not be disturbed absent an abuse of discretion. An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015) (citation omitted).

We agree that any claim respecting Detective Wright's qualifications has been waived.  This stipulation is admittedly not the model of clarity and the Commonwealth did not seek to qualify Detective Wright as an expert in any particular field following this stipulation.  We note that the admission of such testimony is specifically governed by statute.

> **(a) Scope.--**This section applies to all of the following:
>
> > (1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).[1]
> >
> > (2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).
>
> **(b) Qualifications and use of experts.—**
>
> > (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence,

- 9 -

that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) **If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors**.

. . . .

42 Pa.C.S. § 5920 (emphasis added). *See Commonwealth v. Olivo*, 127 A.3d 769 (Pa. 2015) ("Section 5920 is clearly a rule of evidence. . . . [it] merely provides the substantive authorization to present that testimony."). Herein, Detective Wright was qualified as an expert pursuant to counsel's stipulation.[3] Therefore, the trial court did not err in admitting the evidence.

Relatedly, Appellant argues that he was entitled to an expert report pursuant to Rule of Criminal Procedure 573, which governs pretrial discovery. The Rule states in pertinent part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* . . .

. . .

---

[3] Appellant argues in his brief that "Defense counsel stipulated to Detective Wright's qualifications as a Pittsburgh police officer." Appellant's brief at 27. That stipulation is nonsensical. Detective Wright was qualified as a police officer by virtue of the fact that the City of Pittsburgh employed him as one. Thus, it is unclear what other topic would have been covered by the stipulation aside from Detective Wright's expert opinions stemming from his experience as a sexual crimes detective. *See Commonwealth v. Ratsamy*, 934 A.2d 1233 (Pa. 2007) (police officer qualified as expert for purposes of opining defendant possessed drugs with intent to deliver).

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

. . .

(2) *Discretionary With the Court.*

. . .

(b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

. . .

Pa. R. Crim. P. 573. Herein, Appellant does not claim that the Commonwealth had a report in its possession and failed to turn it over in violation of Rule 573(B)(1)(e). Additionally, Appellant does not argue that he lacked notice that the Commonwealth intended to call Detective Wright. Thus, he was not deprived of the opportunity to request that the Commonwealth generate a report pursuant to Rule 573(B)(2)(b). No relief is due.

Appellant's final issue claims that the trial court acted improperly throughout the course of the trial to a degree that his right to a fair and impartial trial was infringed in violation of due process. We note that Appellant did not move for a mistrial or otherwise present this issue to the

trial court during trial. Rather, he raised the claim for the first time in a post-sentence motion for a new trial. However, there is a natural concern that a party who believes he has angered a judge will not wish to incur further wrath by requesting a mistrial or otherwise draw attention to the issue. Since the Commonwealth does not suggest that the claim has been waived, we shall address it.

In *Commonwealth v. Rayner*, 153 A.3d 1049 (Pa.Super. 2016), we set forth the applicable standard of review when assessing a claim that a defendant's due process rights were violated based on a trial judge's remarks and conduct. The analysis applies principles of bias.

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. ... Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune. However, [a] judge's remarks to counsel during trial do not warrant reversal unless the remarks so prejudice the jurors against the defendant that it may reasonably be said [that the remarks] deprived the defendant of a fair and impartial trial.

*Id*. at 1060 (quoting *Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (alterations in original)). This analysis presents a question of law and our standard of review is *de novo*.

- 12 -

In support of his contention that the trial judge's actions denied him a fair and impartial trial, Appellant alleges that the trial court: (1) failed to require the Commonwealth to state the grounds for some of its objections; (2) did not permit him to make a record regarding the denial of his pre-trial motion requesting additional jury *voir dire* questions; (3) improperly permitted expert testimony; (4) improperly foreclosed him from impeaching C.G.; (5) *sua sponte* interrupted Appellant's questioning without corresponding objection by the Commonwealth; and (6) criticized counsel's legal skills in front of the jury.

We begin our analysis by discarding the first four listed complaints as irrelevant to this claim. First, Appellant asserts that the trial court erred by not requiring the Commonwealth to state specific grounds for several objections. Appellant does not cite any authority requiring a trial court to require a party to specifically state grounds for objection, nor does he suggest that the objections were improperly sustained. Second, Appellant fails to explain why a court is obligated to permit a party to state on the record its reasons for wanting to ask a particular *voir dire* question. We address the third and fourth matters together, as both allegations simply repeat the foregoing two points of error raised on appeal, which we have disposed of *supra*.

We now turn to Appellant's core allegation that the trial court improperly interjected during the case and "demonstrated a negative

attitude towards the defense counsel, which likely reflected on the overall defense and the defendant." Appellant's brief at 34. We highlight the most egregious of these comments, in which the trial court criticized counsel's attempt to simultaneously refresh a witness's recollection and impeach the witness.

Q. Would it refresh your recollection if you were to look at a transcript of that interview?

A. Yes.

[COUNSEL]: Your Honor, may I approach the witness?

THE COURT: Certainly.

Q. If you could, to yourself, read maybe the first eight lines of this.

A. (The witness complies).

Q. Isn't it true that you were asked: "And did he have a condom?"

A. He didn't have a condom.

Q. You were asked that?

A. Yes.

Q. And you said: "No, no, he never wore condoms when he did it to me."

THE COURT: [Counsel], I'm not sure if you know how to impeach through prior testimony. I'd be glad to give you a refresher course.

N.T., 8/11-13/15, at 73-74. **See also id**. at 76 ("Q. And isn't it true that you told--; THE COURT: No. Now you say do you remember what your

response was."); *id*. at 82 ("If you would do it correctly according to the rules of evidence.") (responding to Commonwealth objection).

We agree that these comments were improper. We now address whether the cumulative effect of these comments entitles Appellant to a new trial. Appellant relies upon three cases, each of which granted a new trial: ***Commonwealth v. Claiborne***, 102 A.2d 900 (Pa.Super. 1953); ***Commonwealth v. Horvath***, 285 A.2d 185 (Pa. 1971); and ***Commonwealth v. Stallone***, 126 A. 56 (Pa. 1924). We briefly discuss each case.

In ***Claiborne***, the judge frequently interrupted testimony and made remarks throughout trial, leading the opinion to state:

> These caustic and scathing, and, for the most part, frivolous interjections, and others to which we shall not refer, delineate the tawdry pattern of the trial. They offended the most rudimentary sense of 'justice judicially administered'. **Perhaps none constitute[s] reversible error but taken together they indicate an unjudicial and trifling approach** to a serious legal problem, serious at least to appellant, as his sentence proves.

*Id*. at 902 (emphasis added). Appellant highlights the emphasized language in support of his argument. However, ***Claiborne*** did not grant a new trial on these grounds. The opinion immediately segued into a discussion of the trial judge's cross-examination of the appellant during his testimony. "Howbeit, unquestionably the trial judge's merciless cross-examination of appellant was clear reversible error." ***Id***. at 902.

- 15 -

In **Horvath**, **supra** our Supreme Court granted a new trial on two independent grounds, the second of which is relied upon by Appellant.[4] Prior to commencing trial, the court admonished defense counsel for failing to enter a notice of appearance and lectured counsel about delays in selecting the jury and commencing trial. When defense counsel interjected to offer his side of the story, the judge asked more questions, sarcastically concluding with, "Those are the answers you get, members of the jury." **Id**. at 188. **Horvath** concluded that these comments warranted a new trial. Its disposition on that ground did not cite or discuss any case law, instead relying upon the Canons of Judicial Ethics.

> This conduct by the trial court falls far below the standards set forth in the second paragraph of Canon 15 of the Canons of Judicial Ethics:
>
> > Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.
>
> Our system of submitting legal matters, including, as in the instant case, the determination of whether the state has the right to deprive a man of his liberty, to a fair impartial jury

---

[4] The other ground warranting reversal was the trial judge's remarks during closing instructions. Despite the fact that burglary charges had been dropped due to insufficient evidence, the judge told the jury, "[Y]ou will recall they were arrested and charged with burglary." **Horvath**, **supra** at 186.

depends on strong efforts by all concerned to keep the atmosphere in which the case is tried fair and impartial. When a judge subjects counsel for one of the litigants to undeserved oral criticism, the delicate balance upon which the creation of such an atmosphere depends may be affected. The jury is bound to remember the incident and the danger is too great that the party represented by the lawyer thus criticized may be prejudiced.

*Id*. at 188.

Finally, in *Stallone*, the Court also granted a new trial due, in part, to a judge's remarks towards counsel. The judge told defense counsel, "You know that is not proper examination[.]" Counsel protested, which prompted the judge to respond, "You have no right to lecture the court, and I want you to cut it out. I have taken all I am going to take from you." *Stallone*, *supra* at 57. However, as in *Claiborne*, the conduct standing alone did not warrant a new trial. "In this case we feel the trial judge went beyond the discretion vested in him in the conduct of the trial and **by his manner and language possibly deprived** defendant of the fair and impartial trial to which he is constitutionally entitled." *Id*. (emphasis added). Relief was granted due to the judge's comments in addition to a host of other errors.

We now proceed to examine the cases in which reviewing courts refused to grant a new trial. The Commonwealth draws our attention to *Commonwealth v. McGuire*, 488 A.2d 1144 (Pa.Super. 1985), wherein the appellant complained that the trial court "through various interruptions of trial counsel and other interjections into the trial proceedings, prejudiced the jury against him and thus prevented a fair and impartial trial." *Id*. at 1152.

- 17 -

Specifically, the judge sarcastically asked, "Do you, counselor?" when the defense attorney asked a police officer, who acted as an undercover agent, whether he habitually used drugs. The judge also *sua sponte* warned the lawyer not to castigate the same witness for using false names in connection with his undercover duties. *Id*. at 1153. We denied the request for a new trial, stating, "We are satisfied that these remarks, which were directed solely at counsel and not appellant, did not reach such a level where it could be concluded that appellant was denied a fair and impartial trial." *Id*. at 1153.

As this passage demonstrates, we do not automatically assume that comments directed towards counsel invariably color the jury's perception of the defendant. ***Commonwealth v. Hudson***, 820 A.2d 720 (Pa.Super. 2003), further illustrates this point. In ***Hudson***, defense counsel concluded her cross-examination of a Commonwealth witness, who had admitted that she could not identify Hudson as one of the perpetrators, by remarking "I appreciate your honesty." *Id*. at 723. The next day, the trial court reprimanded counsel in front of the jury for intruding on the jury's function of assessing credibility, telling the panel that the comment "was offensive to me. And I think it should be offensive to you[.]" Hudson argued that the judge denied him "a fair and impartial trial by making prejudicial remarks directly to the jury." *Id*. at 723 (quoting Hudson's brief). We concluded

that this comment did not warrant a new trial, because the criticism was strictly limited to counsel and could not have contributed to the verdict.

> Although the judge was critical of [defense counsel], his criticism was directed toward her individually and not toward Hudson. We fail to see how the court's remarks can be viewed as projecting an adverse inference upon the defendant or his case. The instructions did not, as Hudson argues, reflect the court's opinion as to the credibility of [the witnesses]. The effect upon the jury of either [counsel]'s remark or the trial court's instructions, if there was any at all, would have been slight. We have no doubt that this isolated incident could not have had a substantial influence on the outcome of the case, especially given the overwhelming evidence of Hudson's guilt. On this record, there was no prejudice to Hudson and his argument fails.

*Id*. at 724–25.[5]

As is evident from these authorities, there is not a firm guide in determining whether and when a trial court's conduct crosses the threshold from unwise and regrettable commentary to depriving the defendant of his right to a fair trial. The inquiry is necessarily fact-intensive even though it ultimately poses a question of law.

After careful review of these precedents and the trial transcript, we find that the challenged conduct does not rise to the required level of prejudice necessary to grant a new trial. Unlike ***Claiborne***, this case does not involve the "merciless cross-examination" of the defendant, nor did the

---

[5] ***Hudson*** noted that the trial court's criticism was deserved in the sense the remark was improper. Nevertheless, the reasoning regarding the divide between criticisms of counsel and criticism of the defendant is categorical.

trial court commit a litany of legal errors as in *Stallone*. *Horvath* represents a closer case factually, but even in that case the judge committed clear error by telling the jury to consider that the defendants therein were arrested for burglary, even though that charge had been dropped.

Hence, we conclude that the present circumstances are more comparable to *McGuire* and *Hudson* than the cases cited by Appellant. The trial court's comments were critical only of Appellant's counsel's legal skills and thus the judge's ire was not directed towards Appellant. Nor did the trial court mock or belittle counsel's line of questioning, as opposed to counsel's attempts to pursue those topics. As in *Hudson*, we do not doubt that the comments did not have a substantial influence on the outcome of this case. The jury's decision ultimately came down to whether the jury believed C.E. or Appellant, who testified in his own defense, not whether the jury thought that Appellant's counsel was a skillful advocate.

While we ultimately find that Appellant was not prejudiced and he received a fair and impartial trial, we remind the trial court that a judge "occupies [an] exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality." *Commonwealth v. Myma*, 123 A. 486, 487 (Pa. 1924). While a trial judge has wide discretion in maintaining order and insuring an orderly trial, those goals can surely be achieved without denigrating a lawyer's skills in front of the jury. Furthermore,

- 20 -

counsel is presumed effective, and it is not the role of the court to assess trial counsel's performance during trial.  Hence, we express our disapproval of the trial court's comments, even though they do not warrant the grant of a new trial.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2017